BENJAMIN BRUNDRED and others v. The PATERSON MACHINE COMPANY and others.

Upon a motion for an injunction, and the appointment of receivers, under the act, entitled, "An act to prevent frauds by incorporated companies," the primary question is, whether the corporation be insolvent or not.

If it be a balancing question, and the course of those who manage the affairs of the company appears to be upright and just, the doubt should be resolved in favor of the rights of the company.

It would be unwise and impolitic to interfere with any corporation, so long

as they are acting with an honest purpose, unless their condition is hopeless, or their course of action such as to jeopard the interests of creditors and the public.

The mere opinions of witnesses in regard to the insolvency of a company, without referring to the facts upon which their opinions are founded, are entirely insufficient, and can never form the basis for the action of the court.

The affidavits of the complainants, made after filing the bill, are not competent to be read upon a motion for an injunction and the appointment of receivers.

BILL for an injunction, and the appointment of receivers, under the act, entitled, "An act to prevent frauds by incorporated companies." The bill is filed on behalf of the complainants and of all others the creditors of the Paterson Machine Company who shall come in and seek relief by, and contribute to the expense of this suit. It sets forth, that the Paterson Machine Company was incorporated by an act of the legislature of the state of New-Jersey, passed on the twenty-fourth day of January, eighteen hundred and thirty-seven, for the purpose of manufacturing cotton, wool, flax and silk machinery, and steam and locomotive engines. That among other things, it was by the said act of incorporation enacted, that the stock, property and concerns of the said company should be managed and conducted by five directors, being stockholders, one of whom should be president; that the capital stock of the said company should not exceed the sum of one hundred thousand dollars, which should be divided into shares of twenty-five dollars each, but as soon as the sum of twenty thousand dollars of the said capital stock should have been subscribed and paid, or satisfactorily secured to be paid, it should be lawful for the said company to commence business, and with that capital to carry it on until they should deem it expedient to extend their operations; and it was in and by the said act further enacted, that the directors should at all times keep or cause to be kept proper books of account, in which should be regularly entered all the transactions of the said corporation, which books should at all times be open to the inspection of the stockholders of the said corporation, or their legal attorney or attorneys.

That by virtue of the said act of incorporation, the said company, on or before the first day of January, eighteen hundred and forty, went into operation, more than twenty thousand dollars of the capital stock having been paid in, and commenced their said business, and that the said company have purchased and received large amounts of personal and real property, such as are necessary and useful for the said corporation to carry on their manufacturing operations; and that the complainant, Benjamin Brundred, and the defendants, Daniel K. Allen, William Shippey, Josiah Shippey and Francis Del Hoyo, have been chosen directors, and the said four defendants are still acting as the directors of the company; and that, under and by virtue of the said act of incorporation, the company carried on business until they became insolvent and suspended their ordinary business. That the said company have become and are largely indebted to the complainants in divers sums of money, amounting, as the complainants believe, to four thousand dollars, and that Benjamin Brundred, one of the said complainants, has become liable for the said company, upon contracts entered into by him as agent for and in behalf of the said company, with divers persons in the republic of Mexico, where the said complainant resides, and which said contracts have been forfeited by the said company, whereby the said complainant has become liable on behalf of said company to pay large sums of money on account of the said contracts; and that the said company are also, as the complainants are informed and believe, indebted to other persons in still larger sums of money.

That on the first day of October last past, or thereabouts, the said the Paterson Machine Company suspended the ordinary business of the company for want of funds to carry on the same, and from that time have neglected and refused to pay their just debts; and that the said Daniel K. Allen, William Shippey, Josiah Shippey and Francis Del Hoyo, or some of them, have the custody of the books of account and effects of the said company, and that they and the said William Shippey, president of the said company, have refused the said Benjamin Brundred,

one of the stockholders and directors of the said corporation, or his legal attorney, permission to inspect the said books, although requested so to do, and have refused to give full information of the true condition and situation of the said company ; and as the complainants have heard and verily believe, and they charge that the said the Paterson Machine Company are insolvent, and unable to pay their just debts, and have no hope or expectation of ever being able to pay all their just debts, or of again resuming their ordinary business. That the said company have been prosecuted in several suits, for moneys due by them to the creditors of the said company, and that judgments are about to be obtained against said company, in the circuit court of the county of Passaic, at the next term thereof, which is to be in a few days. That the said Daniel K. Allen, William Shippey, Josiah Shippey and Francis Del Hoyo, have combined to defraud the complainants, and to prevent the collection of the moneys due to them respectively, by making a fraudulent transfer and sale of the assets of the said company to themselves, or some of them, and under pretence of such sales and transfer, conveying the said assets of the company beyond the jurisdiction of this court.

That the said Daniel K. Allen, William Shippey, Josiah Shippey and Francis Del Hoyo, acting as directors of said company, allege and pretend that they have within thirty days last past, sold and assigned all the personal property and assets of the said company, to the said Francis Del Hoyo, excepting thereout the tools and implements and such machinery as is necessary to do the work heretofore done by the company, the property so sold amounting in value to the sum of twelve thousand dollars, or thereabouts; and they or some of them also pretend that the said defendants, so acting as directors of said company, have leased the real estate of said company, including the machine shop, foundry, brass shop, blacksmith shop, and also the tools, implements and machinery of said company, including all not so conveyed away by the said company, as aforesaid, to the said Daniel K. Allen and William Shippey, for

a long time, but for, how long the complainants are unable to state; and the complainants charge that these acts, if they have been done, were done with the avowed intention of discontinuing the business of the said company for want of funds to carry it on, and also for the purpose, as the complainants believe, of preventing the creditors of said company collecting their debts, and also with a full knowledge on the part of all the parties thereto of the insolvency of the company, and of the suspension of their ordinary business for want of funds to carry it on.

That in pursuance of such fraudulent sale and transfer of the said property to the said Francis Del Hoyo, he, in connection with the other defendants above named, have been carrying a part of the machinery belonging to the said company, to the city of New-York, and that at least one throstle and several carding machines, of the value of seventeen hundred dollars, have been so conveyed away, and they, the defendants, are about to carry the remainder so purchased, or pretended to be purchased, to the city of New-York, and from there to some other parts, to the complainants unknown; and the complainants have been informed and believe, that the vessel that is to carry the same away, is to sail in a few days from the city of New-York, and that the actings and doings of the defendants are contrary to equity and good conscience.

The prayer of the bill is, that the complainants, and other creditors of the said company who may come in as parties and contribute to carrying on this suit, may be paid what is justly due to them; that the said company, their officers and agents, may be injoined from receiving any debts due to the said corporation, and from making any sales or transfers of the assets of the said company to themselves or to any other person, and from conveying the said assets, or property of the said corporation, or any property that belonged to the said company, and which has been leased or transferred, or pretended so to be, to the said defendants, or any of them, beyond the jurisdiction of this court, and from exercising any of the franchises or privileges granted by the said act of incorporation; and that a recei-

ver or receivers or trustee may be appointed, with power and authority to sue for, collect, receive and take into possession, all the goods, chattels, rights and credits, moneys and effects, lands and tenements, books, papers, choses in action, bills, notes and property of every description, belonging to said company at the time of their suspending business as aforesaid, and to sell, convey and assign all the real and personal estate of the said company, and to bring into this court all the moneys and securities for moneys arising from such sales, or which the said receiver or receivers or trustee shall collect or receive by virtue of the authority vested in them.

The bill was filed on the twenty-sixth day of January, eighteen hundred and forty-three.   On filing the bill an injunction issued, as prayed for, except that it was so qualified as not to prevent the running of the machinery, nor the payment of the operatives.   Notice was at the same time given of an application for a full injunction, and for the appointment of receivers, on the tenth day of February, then next, which was subsequently postponed to the tenth of March.

On the sixth day of March, joint and several answers were filed in the name and under the seal of the Paterson Machine Company, and by the four defendants, Daniel K. Allen, Josiah Shippey, William Shippey, and Francis Del Hoyo.   The answer admits the grant of the charter, and the organization of the company, as charged in the bill of complaint, and that they went into operation about the fifth of June, eighteen hundred and thirty-seven, with a capital of twenty-five thousand dollars.   States that they have purchased a large and valuable lot near the centre of the town of Paterson, upon which were erected extensive and costly edifices and works for carrying on the machine-making business; that they have provided, at great expense, a steam engine, gearing and apparatus, a foundry, shops and tools, necessary and useful for carrying on the manufacture of machinery authorized by the act of incorpora-

tion, and that they commenced and have continued a profitable business therein, and that from time to time they have purchased more lots, and have enlarged their establishment, and have applied and used large sums of money in making valuable additions and improvements.

The answer further states, that the capital stock of the said company is owned, in equal shares, by the complainant, Benjamin Brundred, and by the defendants, D. K. A., J. S. and F. D. H., excepting four shares, which are in the name of the defendant, W. S.; that the said five persons are the directors; that W. S. is the president, and J. S. the secretary of the said company. Admits debts due from the company to the complainants, excepting Benjamin Brundred, exceeding eight hundred dollars, and alleges that the whole amount of indebtedness to their hands and workmen does not now exceed two thousand five hundred dollars. Denies that the complainant, Benjamin Brundred, is a creditor of the company, or that he has any valid claims against them for damages for the non-fulfilment, on their part, of contracts made by him on behalf of the company, and alleges that the said Benjamin Brundred is in fact a debtor of the company to a large amount. Denies that any of the complainants have commenced suits at law against them for their alleged demands, and states that the suits which have been commenced against them, as charged in the bill of complaint, were instituted principally by creditors residing out of the state. Alleges that the directors of the company have at all times caused proper books of account to be kept, according to the requirements of the act of incorporation, and that the said books have at all times been kept open for the inspection of the stockholders and their attorneys. Denies that the said Benjamin Brundred, or any person claiming to be his attorney, has ever been refused permission to inspect the said books.

Denies that the company are insolvent, or that they suspended business for want of funds to carry on the same, or that they have no hopes or expectation of again resuming their ordinary business. Alleges that a large part of the business of the com-

[Brundred et al. v. The Paterson Machine Co. et al.]

pany has been the manufacture of machinery to fill orders for Mexico ; that such business has been very profitable, and has enabled them to employ a large number of hands, and to manufacture a great quantity of materials; that relying on a continuance of that market, they kept their works in full operation during the winter and spring, but that owing to the difficulties in that country, the orders for machinery did not equal the expectations of the defendants; that owing to the depressed state of business in this country, and the dulness of the market, the directors, feeling unwilling that a larger stock of machinery and materials should accumulate on their hands, from motives of prudence, about the twenty-first of May last, determined to stop the works, intending to put them in operation again as soon as they could find a market for their machinery ; that little or no manufacturing has been done by them since that date, and that they have not been able to make sale of their manufactured machinery, except as hereafter mentioned.

Denies that any fraudulent sale or transfer of the assets of the company has been made, or any attempt to transfer the assets or property of the company beyond the jurisdiction of the court.   States that the company being unable to make sale of their manufactured machinery, and perceiving that their works were sustaining injury from want of use, on the nineteenth of January, eighteen hundred and forty-three, the directors, upon mature reflection, determined it would be for the interest of the creditors and stockholders of the company to accept of a proposition of D. K. A. and W. S., two of the defendants, for the purchase of the finished and unfinished stock, and a lease of the establishment, for the sum of fifteen thousand dollars; and the company accordingly, on that day, sold and tranferred to them all their finished and unfinished machinery, and all their raw materials and stock on hand, and did demise and lease to them all their real estate, machinery, apparatus, tools and patterns for making machinery, and the right to use all the patent rights which the company had the right of using, subject to all the rights of the said Del Hoyo as mortgagee of the said

26

premises. Alleges that the said sale and lease were not made for the purpose of preventing the creditors of the company from collecting their debts, or with the knowledge or belief that the company was insolvent, but in good faith, and for the benefit of the creditors ; that the entire consideration was to be applied to the payment of the debts of the company, and that the arrangement was made that the company might be sooner enabled to discharge its indebtedness ; and the defendants believe that the assets and property of the company, if prudently managed, are much more than sufficient to pay all their debts.

The defendants, D. K. A. and W. S., in answering, say, that they considered that the aforesaid arrangement would enure to the benefit of the creditors and stockholders of the company ; that after the arrangement was made, these defendants reorganized the machine shop and the works connected therewith, and that at the time of the service of the injunction issued in this cause, they had set all the works in operation ; that they had sold a part of the finished machinery to Francis Del Hoyo, one of the defendants, for adequate prices, and that the removal thereof to the city of New-York, was in good faith, in the ordinary course of their business, and without any design of fraudulently removing the property beyond the jurisdiction of the court, or of defrauding the complainants or any of the creditors of the said company.

That if the company had suspended business on account of insolvency, or had not expected to continue their operations, the directors had power, by virtue of the charter, to dissolve the company, and thereupon, by virtue thereof, the directors would have become trustees for settling all the affairs of the company, unless the stockholders had appointed other persons for that purpose.

That the company own, in fee, very valuable real estate for carrying on their business, which cost originally at least forty thousand dollars ; that the original purchase money remaining on mortgage is six thousand nine hundred and seventy-five dollars ; that the steam engine and machinery upon the said pre-

mises cost over thirty thousand dollars ; that they are of the best quality, and in good order ; and that on the eighth of July, eighteen hundred and forty-one, they were mortgaged, together with the real estate of the company, to the defendant, Del Hoyo, for twelve thousand eight hundred dollars, lent and advanced by him to the company.

Admits that the personal property sold by the company to the defendants, D. K. A. and W. S., may be worth twelve thousand dollars, as stated in the complainants' bill. States that the debts due to the company amount to over four thousand seven hundred dollars, (the greater part of which they consider good,) in addition to the said sum of fifteen thousand dollars due to them from the defendants, D. K. A. and W. S., as afore-said, and that the defendants believe that there is a large sum of money due to the company from the complainant, Benjamin Brundred. That the whole amount of the indebtedness of the company, including the demands of Del Hoyo which are not secured, do not exceed the sum of twenty-three thousand five hundred dollars ; and that the property and effects, rights and credits of the company, far exceed all their liabilities.

The answer further states, that if the injunction is continued, and the property of the company should pass into the hands of receivers to be disposed of, the defendants are satisfied that the property must be ruinously sacrificed, that the property and machinery of the company would be sold far below its value, and that the whole capital stock of the company would thus be irremediably sunk and lost ; but that if the company should be permitted to carry out their arrangements, and to conduct their business as they have designed, the defendants believe that they will be able to pay all the creditors of the company, and save the capital stock.

The matter came on to be heard before the chancellor upon the motion for an injunction, and for the appointment of receivers, at a special term at Newark, on the tenth day of March, eighteen hundred and forty-three.

[Brundred et al..v. The Paterson Machine Co. et al.]

Numerous affidavits were taken previous to the argument, including, among others, the affidavits of the complainants, which were read upon the hearing, subject to exceptions. The affidavits of the defendants, in addition to the answer, were also read.

Scofield and H. W. Green, for complainants.

A. S. Pennington and A. Whitehead, for defendants.

THE CHANCELLOR. This bill is filed for the purpose of obtaining an injunction against the Paterson Machine Company, and for the appointment of receivers. The bill charges the company to have become insolvent, and to have suspended business for want of funds to carry it on. The complainants are, one stockholder to the amount of one quarter of the whole stock, and sundry creditors, who have claims to the amount of two or three thousand dollars, as they allege, for their work and labor; the parties who are made defendants, are the corporation and its directors. The defendants have answered by a joint and several answer, and it is denied on the part of the corporation, that the company is insolvent, or that they suspended business for want of funds, but that from motives of prudence alone, on or about the twenty-first of May last, they stopped their works for a time, intending to set them in motion again as soon as fresh orders and a new demand for their manufactures should justify it. This being the answer of the corporation alone, is not under oath, but under the seal of the company. On this part of the case, the remaining defendants answer, that they believe the assets and property of the company, if prudently managed, are much more than sufficient to pay all its debts. Thus it appears upon the pleadings, there is a wide difference between the parties.

The proceedings are founded on the act of eighteenth of February, eighteen hundred and twenty-nine, entitled "An act to prevent frauds by incorporated companies," and the bill must be

sustained under the provisions of that act, or the suit fails. There are other matters introduced incidentally, but it is by force of this act alone, that the complainants by their bill can have the aid of this court.

Whether this corporation be insolvent or not, is the primary and all important question, and this must ever be a delicate matter to settle. Many of the witnesses examined to the point, express nothing more than an opinion on the subject, without referring to any facts from which such opinion is formed. Such evidence is entirely insufficient, and can never form the basis for the action of the court. The facts must be examined, and an estimate of the actual condition of the company ascertained. If it be a balancing question, and the course of those who manage its affairs appears to be upright and just, the doubt should be resolved in favor of the rights of the company. It would be unwise, and against public policy, to seek an occasion for interference with any corporation, so long as they are striving against adversity with an honest purpose, unless their case is hopeless, or their course of action so unfair as to jeopardise the interests of creditors and the public.

I have felt it to be an incumbent duty, in investigating this case, to look at the condition of the company with a liberal eye, and if possible not to interfere with its concerns. I had hoped the evidence would have justified me in not interposing ; but I am constrained to come to a different conclusion. This conclusion is forced upon me, more by the course taken by the directors and managers in reference to the affairs of the company, than from the situation of the property as it originally stood.

The charter for this company was obtained on the twenty-fourth of January, eighteen hundred and twenty-seven, with a capital not to exceed one hundred thousand dollars, and with power to commence business as soon as twenty thousand dollars should be subscribed and paid, or satisfactorily secured. The stock is now held by five persons, who are also the directors. In fact, four persons hold it in equal parts, except four shares, which are transferred to a fifth individual, the act requiring five

26*

directors, all of whom must be stockholders. The amount of stock subscribed is twenty-five thousand dollars, which at twenty-five dollars a share, gives one thousand shares.

The property of the company consists of a valuable real estate in the town of Paterson, with buildings, machinery and appendages, suited to the business conducted by the company; a quantity of finished and unfinished manufactured articles, and assets to the amount of about four thousand dollars. The indebtedness of the company is about forty-three thousand dollars, of which, not far from twenty thousand dollars is secured by mortgage on the real estate. The only possible question arises upon the value to be placed on the real estate, machinery and fixtures. Are they worth more than the twenty thousand dollars, for which they are mortgaged? The evidence here is very defective, and it is impossible, from the meagre testimony on the subject, to arrive at any very accurate conclusion. There should have been estimates made of its present value by competent judges. The defendants do not state the value of the real estate at this time, but say it cost about forty thousand dollars. Nothing can be more unsatisfactory than to judge of the present value of real estate and improvements, by their cost a few years since. But in this case, it seems by the minutes, that the real estate was purchased by the company, of the four persons who hold the stock, and who were at the time the directors. The price for the original purchase was fixed at twenty thousand dollars, but it was, in truth, a company buying of itself, and therefore forms no test of value, even at that time. I am firmly convinced that the real estate and fixtures are covered by mortgages for as much as will ever be realized from them. It must be superadded to this estimate, that the company have leased the premises for a small rent, for five years, subject to incumbrances. If I am right in this, it decides the insolvency of the company, for the remaining property, consisting of machinery, finished and unfinished, raw material, stock on hand, and indeed all the personal property not embraced in the mortgages, was sold by the company, (including the rent for five years of the

mill and machinery,) at fifteen thousand dollars. This sum, with four thousand dollars of other assets, as estimated, will still (should the mortgages be paid out of the real estate) not be sufficient to liquidate the demands against the company, by several thousand dollars. Firmly as I am persuaded from these facts, that the company is insolvent, yet, had they been pursuing a steady course in business, 1 would not have disturbed them. But what is the course pursued? The company stopped their business in May last. The directors, or some of them, have repeatedly declared to creditors, when they asked for their pay, that the company was insolvent. The creditors have been denied payment of their debts, some have taken in payment goods at prices beyond what they could possibly realise from them, others have prosecuted suits at law, and executions are now hanging over the company in the hands of the sheriff of Passaic. With a company thus circumstanced, and with a mortgage of twenty thousand dollars upon their real estate and fixtures, the directors, who are also the owners of the stock, at a meeting held on the twelfth of January last, a short time before the filing of this bill, and at which meeting all the directors were present, (except the complainant, Benjamin Brundred,) agreed to lease the real estate for five years, and to sell all the personal property for fifteen thousand dollars, to Daniel K. Allen and Josiah Shippey, two of the directors. If this proceeding be lawful and binding, what remedy can a creditor have for his money? The real estate is mortgaged for its value, and if not, there is a lease in addition upon it, for five years, and two of the directors own all the personal property. Tolerate this proceeding, and a corporation will be the readiest and simplest form of fraud known to the business community. It will be observed, that this is dealing by the wholesale, with the property. It effectually puts it beyond the reach of any creditor, and by the very simple process of two of the directors, who represent a majority of the stock present, becoming the purchasers. It is nothing more than the directors placing all the property of the company, when pressed for debts, into the individual hands of some of its direc-

tors. But it seems a few days after this, at another meeting of the board, held on the eighteenth of January last, Josiah Shippey, one of the purchasers, for some reason, desired to rescind the contract for purchasing the personal property, and it was done; and at a meeting of the directors on the next day, the same contract which was made by the company with Daniel K. Allen and Josiah Shippey, was agreed, to be made by the company, with Daniel K. Allen and William Shippey. They could thus make and unmake a contract at pleasure; they had the power in their own hands, and had only to will it, according to this doctrine, and the property would pass beyond the reach of creditors. It is curious, in this connection, to observe the terms of payment fixed between these parties. The consideration was to be paid by the directors who purchased, either in money or in the bills payable, or other outstanding debts of the company, at par value. This clause would enable the two directors who purchased the property, to buy in the debts of the company at a reduced price, and pay their own with them at par.

The directors, by this course of action, do in effect declare the company insolvent, and put it out of its power to carry on business. If it was designed to renew the business, why lease the workshops and machinery for five years? Why dispose of all the tools and implements of trade, and all the articles of manufacture in hand, whether finished or unfinished? If this company was embarrassed, the creditors were entitled to have the property applied, as far as it would go, in a fair course of liquidation.

But there is another transaction by this company, which I should not pass unnoticed. In April, eighteen hundred and forty-two, only the month preceding the date of their suspension, they declare a dividend of twenty-four thousand dollars, on a capital of only twenty-five thousand dollars. This was of course given to the directors themselves, for they owned all the stock. They say in their answer, that this dividend was made from the profits of the concern, and that they entertained then

[Brundred et al. v. The Paterson Machine Co. et al.]

no idea of stopping business. But it was a most extraordinary dividend. The company owed large sums of money, and besides, they appear to have had no funds to pay with. Brundred and J. Shippey's shares of the dividend were paid by giving up and cancelling obligations which the company had against them, Del Hoyo and W. Shippey received the notes of the company for their shares, and Allen received a draft on Del Hoyo for his share, which draft Del Hoyo paid and charged the company. The result of all this was, that the company was weakened by the amount of the dividend, and the less able, by that sum, to pay its debts.

I have not looked into the affidavits made by the complainants since filing the bill, because it appears to me improper to allow them to be read. They have the opportunity at the time the bill is filed, of subjoining their affidavits, and they should do so and file them with the bill.

In view of all these facts of the case, and particularly from the position in which the directors have placed the company and its property by their own action, I see no alternative between rendering the act on this subject nugatory, and the appointment of receivers.

The order will be for a full injunction under the act, and appointment of receivers.

Order accordingly.