On the filing of the bill herein an order was made requiring the defendant to show cause why it should not be adjudged insolvent and a receiver appointed. On the return of said order the solicitor of the complainant informed the court his client had been importuned by officers of the defendant to effect a dismissal of the bill, upon assurance given that complainant's claim would be paid. He prayed leave to dismiss the bill, and he was joined therein by a solicitor representing the defendant. He was advised that this court could not be used as a collection agency through the medium of a receivership suit, that the bill filed — a class bill — was for the benefit of not only the complainant, but all creditors and stockholders of the defendant company, and the public at large, and if the defendant was in fact insolvent the bill could not be withdrawn or dismissed upon complainant's motion. Naspo v. Summit Sweet Shoppe, Inc.,106 N.J. Eq. 49; Liss v. Security Finance Co. (not officially reported — docket 76, page 677); Pierce v. Old Dominion, c.,Smelting Co., 67 N.J. Eq. 399; Rawnsley v. Trenton Mutual LifeInsurance Co., 9 N.J. Eq. 95, 96. In the Rawnsley Case, supra, it was held: "Where a creditor or stockholder comes into court under this act, it is not his particular grievance the court is to redress, or his individual interest that is to be protected; but the very object of the act is to protect the public at large from imposition, and to promote and secure the general interest of the stockholders and creditors." The hearing on the order to show cause was continued. On the day to which the hearing was continued another solicitor (the defendant's solicitor of record herein) appeared for the defendant and filed an answer and affidavits in behalf of the *Page 556 
defendant. Another creditor of the defendant petitioned for leave to intervene as complainant in this suit, and an order therefor was granted. The bill of complaint and affidavits filed in behalf of the complainants, and the answer and affidavits filed in behalf of the defendant, manifested such contradictory statements of fact, I deemed it expedient (pursuant to the authority of chapter 207 of the laws of 1919) to designate a master to investigate the affairs of the defendant. I deemed it expedient also to appoint an accountant to examine and audit the books and accounts of the defendant, and to appoint appraisers to inventory and appraise the property of the defendant. I received the reports of the master, the accountant, and the appraisers, and duly considered and filed same. Although the report of the accountant discloses various acts respecting questionable dealings concerning two hundred and fifty-one thousand shares of the capital stock of the defendant, which may be regarded as inimical to the interests of the defendant and discloses also the set-up on defendant's books of an artificial surplus account, I deem it unnecessary to deal therewith in the matter sub judice
in view of the fact that the defendant in my judgment is not insolvent within the purview of sections 64 and 65 of our Corporation act. Under said act a corporation is insolvent when there is a general inability to meet pecuniary liabilities as they mature by means of either available assets or an honest use of credit. Considerable of defendant's assets appear to be what are commonly termed frozen assets; that is, such as may not readily be turned into cash except at a sacrifice; but in this respect the defendant is not unlike many other business concerns of the present day. The general business depression of the past few years, and particularly such as experienced within the past year, has seriously affected many business concerns. The proofs herein disclose that the defendant experienced difficulty in meeting its pecuniary liabilities as they matured by means of available cash, and because thereof sought extension of time within which to make payment of its indebtedness to certain of its creditors. On the date of the filing of the bill herein the defendant was indebted, for bills and accounts payable, *Page 557 
in the sum of $169,650.10. Approximately $165,000 thereof was past due according to trade terms. It had cash in banks and on hand of $25,060.35, and bills and accounts receivable aggregating $194,754.48. The report of the appraisers appointed herein shows the defendant to have real and personal property (excluding moneys in bank and bills and accounts receivable) of $451,462.72, calculated at replacement value, or $247,662.67, calculated atdepreciated value. The report of the accountant appointed herein shows that the defendant has operated at a loss since it commenced business. Considerable of the losses sustained may be hereafter curtailed by economizing in items which go to make up overhead expense. Whether the business of a corporation should be operated at a loss during a business depression or close down at a smaller loss, is a purely business and economical problem to be determined by the directors of the corporation and not by the court. Kelly v. Kelly-Springfield Tire Co., 106 N.J. Eq. 545.
The defendant is free from judgments or other liens under which its property may be sold speedily at sacrifice sales. None of its property is encumbered by mortgage. It appears to me that if the defendant was pressed by its creditors for payment of bills and accounts payable, and was unable to realize upon bills and accounts receivable a sum of money sufficient to meet its creditors' demands, it could readily raise money with which to meet all of its pecuniary liabilities by means of its available assets and an honest use of its credit. No proofs have been established herein, nor has it been alleged that the officers and directors of the corporation are not capable. The proofs indicate that such officers and directors are striving to the best of their ability to advance the business interests of the defendant. Section 12 of the Corporation act provides that the business of every corporation shall be managed by its directors. The authority of the directors in the conduct of the business of a corporation must be regarded as absolute when they act within the law. It is a well-known rule of law — oft repeated — that questions of policy of management are left solely to the honest decision of officers and directors of a corporation. The *Page 558 
court is without authority to substitute its judgment for the judgment of the board of directors when they act within the law. I appreciate that there are many corporations doing business in this period of business depression which if required to prove themselves without the definition of insolvency as known to our law, could not do so, yet are solvent in the ordinary sense of the word. I have in mind in my consideration of the matter subjudice the cautionary words of Judge Baldwin, quoted in the oft-cited case of Citizens Coach Co. v. Camden Horse RailroadCo., 29 N.J. Eq. 299 (at p. 303): "There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case than the issuing of an injunction."A fortiori the appointment of a receiver. The extraordinary
powers conferred upon this court by section 65 of the Corporation act should be exercised with caution, and only when the circumstances of the case and the ends of justice require it. Such appears to be the admonition of our courts as indicated by numerous authorities of which I named several in the case ofKelly v. Kelly-Springfield Tire Co., supra. I have in mind, also, the incalculable harm that may result to a corporation from an injudicious appointment of a receiver therefor. In considering matters such as sub judice: "The facts must be examined; an estimate of the actual condition of the company ascertained. If it be a balancing question, and the course of those who manage its affairs appears to be upright and just, the doubt should be resolved in favor of the rights of the company. It would be unwise, and against public policy, to seek an occasion for interference with any corporation so long as they are striving against adversity with an honest purpose, unless their case is hopeless, or their course of action so unfair as to jeopardize the interests of creditors and the public." Kelly v.Kelly-Springfield Tire Co., supra; Brundred v. PatersonMachine Co., 4 N.J. Eq. 294 (at p. 303). In Greenbaum v.Lafayette and Broad Realty Corp., 96 N.J. Eq. 317 (at p.319), our court of errors and appeals declared: "Depriving a statutory legal business entity of its *Page 559 
corporate life, is a judicial act which should not be lightly exercised, since the intervention of the court carries with it very often in practical execution not only the destruction of the livelihood of those who subsist by its existence, but also the investments of those who have confidently contributed their means to its successful creation, and, finally, but not at all the least of its unfortunate results, such an interposition may be the means of removing from the field of honest successful endeavor, a business asset of substance and importance to the well-being of the state." In the case sub judice the interests of the defendant, its creditors and stockholders, and the public at large, will be best subserved by the court exercising its sound discretion in denial of complainants' prayer for a decree of insolvency and the appointment of a receiver. I will advise a decree dismissing the bill of complaint, and the order to show cause granted thereunder.