Complainants, as stockholders of defendant, pray inter alia
that this court adjudge and decree that the business of defendant has been and is being conducted at a great loss and greatly prejudicial to the interests of its stockholders, so that its business cannot be conducted with safety to the public and advantage to the stockholders, and that an injunction issue to restrain defendant and its directors and officers from exercising any of its privileges or franchises, and that a receiver be appointed for said defendant. The gist of the allegations of complainants' bill is that defendant's business has been and is being mismanaged by its directors and officers. Complainants concede in their bill and argument that defendant is solvent. The defendant is a domestic corporation with an authorized capital stock of $2,000,000, divided into twenty thousand shares of a par value of $100 each. Seven thousand five hundred shares are classified as preferred stock, and twelve thousand five hundred shares as common stock. Twelve thousand three hundred and ninety-eight shares of common stock and five thousand two hundred and sixty-six shares of preferred stock are issued and outstanding. Its principal place of business is in the city *Page 96 
of Hoboken and it employs approximately three hundred and fifty people. It controls by stock ownership the Canadian Elevator Equipment Company, Ltd., of Canada. The owners of upwards of twelve thousand shares of defendant's stock oppose complainants' present endeavor to have a receiver appointed herein. Defendant admits that for several years prior to its present executive officers and directors being placed in charge of its management its business was operated at a substantial loss, but attributes such loss to incompetency of its previous executive officers of whom complainant Shonnard is alleged to be one, and to incompetent management of its previous board of directors of which complainants Shonnard, Sims and Rowntree are alleged to have been members. The proofs herein manifest that the person who was elected vice-president and general manager of defendant on May 19th, 1930, and as president on September 24th, 1930, is by training and education a mechanical engineer who has been practicing as such for upwards of twenty-two years, and who previous to his association with the defendant had a business experience which well fits him for rendering capable service to the defendant. Since his official connection with the defendant various changes were effected which he and those associated with him in defendant's management considered conducive to the well-being of defendant and for advancing the interests of its stockholders. Some of the changes effected resulted in a substantial reduction in overhead expense and operating costs. The grievances and criticism which complainants apparently considered themselves warranted in urging against the ways and means resorted to in the conduct of the business of the defendant during the administration of its former president and board of directors, resulting in the losses hereinabove referred to, cannot reasonably be ascribed to the conduct of defendant's business since the administration of the board of directors and executive officers now serving the defendant. The proofs herein demonstrate that the defendant's present directors and executive officers are capable and experienced business men, all of whom are striving to the best of their ability to prosper the defendant. *Page 97 
Affidavits of officers of the defendant filed herein express optimism for the betterment of the business affairs of the company in the near future, and evidence that as a result of economies effected since the advent of defendant's present directors and executive officers a considerable saving has resulted, and in future will inure to defendant's benefit. Items manifesting such economies and saving are mentioned in numerous affidavits filed in defendant's behalf, among which are affidavits of President Smith, and of director, secretary and treasurer Brent; also affidavit of William H. DeVeer — cashier of the First National Bank of Hoboken, the depository of the defendant. Considerable proof was taken herein, much of which I deem unnecessary to refer to for the purpose of my determination of the matter sub judice. The following quotation from Madsen
v. Burns Brothers, 108 N.J. Eq. 275 (at pp. 278, 279) I regard as applicable to the matter sub judice — "to grant the relief prayed by complainants herein (in view of the fact that the defendant is not insolvent) three statutory requisites must be clearly established — (1) that the defendant's business hasbeen conducted at a great loss and greatly prejudicial to the interests of its creditors and stockholders; (2) that its business is being so conducted; (3) that its business cannot
be conducted with safety to the public and advantage to the stockholders. Such statutory requisites must be clearly manifest in order to confer jurisdiction upon the court. Kelly v.Kelly-Springfield Tire Co., 106 N.J. Eq. 545." The proofs herein do not establish the aforesaid requisites. The bill of complaint was filed by complainant Shonnard in behalf of himself and all other stockholders who might wish to join with him therein. At the inception of the hearing herein application was made for leave to amend the bill by adding thereto other complainants and an order allowing same was entered; thereupon counsel for the defendant, conceiving that this court was unauthorized to permit such amendment, appealed from the order therefor, whereupon this court stayed its said order so as to enable defendant's counsel to apply to the court of errors and appeals for a further stay pending appeal. Such further stay was *Page 98 
denied by said court, and thereupon the instant case was proceeded with to finality. The burden is cast upon complainants to substantiate the essential allegations of their bill by clear and convincing proof. They have not done so. It appears to me that such losses as were experienced since the advent of defendant's present management cannot be ascribed to mismanagement, but, in great measure, to a stringent business depression suffered by business generally. Section 12 of the Corporation act provides that the business of every corporation shall be managed by its directors. The authority of the directors in the conduct of the corporation's business must be regarded as absolute when they act within the law. It is a well known rule of law that questions of policy of management are left solely to the honest decision of the directors of a corporation. Ellerman v.Chicago Junction Railways and Union Stockyards Co., 49 N.J. Eq. 217; Elevator Supplies Co., Inc., v. Wylde, 106 N.J. Eq. 163;Kelly v. Kelly-Springfield Tire Co., supra (at p. 554). A receiver will not be appointed for a corporation which is not insolvent, at the suit of minority stockholders, solely because of errors of business judgment of its board of directors, resulting in losses, in the absence of bad faith or abuse of power. City Bank Farmers Trust Co. v. Ringwood Co., 110 N.J. Eq. 525.
The appointment of a receiver is not a matter of absolute legal right. Sound discretion should be exercised by the court before any such appointment is made. Glaser v.Achtel-Stetter's Restaurant, Inc., 106 N.J. Eq. 150; Kelly v.Kelly-Springfield Tire Co., supra. I have in mind the admonition of Judge Baldwin, quoted in the oft-cited case ofCitizens Coach Co. v. Camden Horse Railroad Co., 29 N.J. Eq. 299
(at p. 303): "There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case than the issuing of an injunction." While said rule of law was declared with respect to the granting of a preliminary
injunction, it is applicable also to the granting of a permanent injunction auxiliary to the appointment of a receiver in a case such as sub judice. The extraordinary *Page 99 
power conferred upon this court by section 65 of the Corporation act should be exercised with caution and only when the circumstances of the case and the ends of justice require the exercise thereof. Such appears to be the admonition of our courts as indicated by numerous authorites, of which I deem it necessary to cite only Oakley v. Paterson Bank, 2 N.J. Eq. 173, 178,179; Brundred v. Paterson Machine Co., 4 N.J. Eq. 294, 305;Rawnsley v. Trenton Mutual Life and Fire Insurance Co., 9 N.J. Eq. 347; New Foundland Railway Construction Co. v. Schack,40 N.J. Eq. 222; Atlantic Trust Co. v. Consolidated ElectricStorage Co., 49 N.J. Eq. 402, 406, 407; Cook v. East TrentonPottery Co., 53 N.J. Eq. 29; Greenbaum v. Lafayette and BroadRealty Corp., 96 N.J. Eq. 317, 319; Kelly v. Kelly-SpringfieldTire Co., supra; Ellerman v. Chicago Junction Railways andUnion Stockyards Co., supra; Elevator Supplies Co., Inc., v.Wylde, supra; Auburn Button Works, Inc., v. Perryman ElectricCo., Inc., 107 N.J. Eq. 554. Great harm may result to the defendant from an unwarranted appointment of a receiver herein.Atlantic Trust Co. v. Consolidated Electric Storage Co.,supra, is an oft-cited authority for the proposition that even where insolvency is proved (and none such is charged in the casesub judice), but it is made to appear that the managers of the corporation are honest and capable and are striving to the best of their ability with a fair prospect of success to relieve the corporation from its embarrassment and put it in a condition where it may carry on its business successfully, and its property is free from judgment or other lien under which it may be sold speedily at a sacrifice, the court should not interfere. If such rule of law, where insolvency is charged and proved against a corporation, should guide the court in refusing to appoint a receiver of a corporation, a fortiori the rule is clearly applicable to the case sub judice because the defendant herein is solvent, and is free of judgments or liens other than a mortgage upon its real estate which is held by its banking depository, which mortgage as an encumbrance upon defendant's property is inconsequential in view of defendant's large net assets. The court may and should take *Page 100 
judicial notice of changed economic conditions affecting business generally. It is common knowledge that since October, 1929, there has been a grave upset in general business conditions throughout this country. A pertinent declaration of the United States supreme court contained in an opinion by Chief-Justice Hughes inAtchison, Topeka and Santa Fe Railway Co. v. United States,284 U.S. 248; 52 Sup. Ct. Rep. 146 (at p. 149) is analogous. While, in the cited case, our highest court declared it might and would take judicial notice of changed economic conditions as affecting railroads, its declaration may appropriately apply to manufacturing business enterprises of magnitude, and also to business enterprises generally. Speaking of the change in economic conditions between the date when a railroad rate was fixed by the interstate commerce commission and the date of application for a rehearing of the case in which such rate was fixed, the court said: "There can be no question as to the change in conditions upon which the new hearing was asked. Of that change we may take judicial notice. It is the outstanding contemporary fact, dominating thought and action throughout the country. As the interstate commerce commission said in its recent report to the congress, `a depression such as the country is now passing through is a new experience to the present generation.'" The report referred to by the court was the forty-fifth annual report, dated December 1st, 1931, of the interstate commerce commission to congress.
Complainants allege as an additional ground for the appointment of a receiver herein that they are aggrieved by action of the defendant's board of directors in voting dividends illegally. Such allegation is not only controverted in defendant's behalf, but it is urged in defendant's behalf that its directors were lawfully empowered to declare the dividends in question. Counsel for complainants, in argument, urged that the action of defendant's directors in declaring dividends "in the face of facts and figures as they appeared on the company's books" cannot be too seriously condemned. Perhaps condemnation, if such were to be regarded as censure, would be merited by the action of defendant's directors *Page 101 
if complainants' allegation were true, but such condemnation or censure may not carry with it the taking of the management of defendant from its directors by means of a receiver appointed by this court. Section 30 of our Corporation act (P.L. 1896p. 286, as amended by P.L. 1904 p. 275) authorizes directors of a corporation to make dividends only from the surplus of a corporation, or from the net profits arising from the business of a corporation. Liability for violation of such section of the Corporation act is enforceable at any time within six years after unlawful payment of dividends at the suit of stockholders against the directors. Fleisher v. West Jersey Securities Co., 84 N.J. Eq. 55.
The proofs herein are contradictory as to whether the defendant had funds available for the lawful declaration of the dividend in question. The declaration of the dividend, and the fixing of the amount, time and terms of payment thereof, was entirely within the discretion of the board of directors, and this court cannot substitute its judgment for the judgment of the directors, if honestly exercised. And this court will not presumemala fides against the directors. The courts of law afford complainants adequate remedy for redress of their alleged grievance in such respect, and this court should not assume jurisdiction to determine such alleged grievance even if it be authorized so to do. This court will not encourage enlargement of the boundaries of its jurisdiction unless the equitable necessity therefor be clearly manifest and emergent.
Complainants allege as a further ground for the appointment of a receiver herein that through the instrumentality of defendant's board of directors a change was effected in defendant's charter and by-laws by eliminating therefrom provisions relating to cumulative voting powers given to defendant's stockholders, and that such action is inimical to complainants' interests, and that the ostensible purpose of defendant's directors in making such change effective was to enable them to elect directors of their own choice. Complainants urge that the action complained of by them warrants the intervention of this court in the affairs of defendant by means of the appointment of a receiver for the defendant to *Page 102 
supersede defendant's present board of directors. Complainants' claim in such respect is untenable. If the fact be as alleged by complainants they have an adequate remedy at law for the redress of such alleged grievance, and this court should not in the casesub judice assume jurisdiction to determine the facts and the respective rights of complainants and defendant with respect thereto. Apparently counsel for the complainants appreciates the weakness of complainants' claim in such respect, and that this court may not question the legality of the action complained of, because counsel has stated in argument of complainants' cause: "We realize that a court of equity has no jurisdiction to test the legality of election of officers or directors; that the jurisdiction as to this question resides in the supreme court." Furthermore, this court will not presume that defendant's stockholders, when duly convened, will not exercise their voting rights in a manner which in their judgment will be conducive to the best interests of the corporation. Dvorin v. Greenberg,106 N.J. Eq. 495. Mala fides will not be presumed against the stockholders.
Complainants also allege malfeasance against defendant's board of directors. Not only have the complainants failed to substantiate such allegation, but I do not find a scintilla of proof herein upon which complainants may base such allegation. The cases of Shuster v. Ventnor Gardens, Inc., 103 N.J. Eq. 93,
and Walker v. Walker Realty Co., 103 N.J. Eq. 300, are cited in behalf of complainants. The cases are inapplicable to the case sub judice. In the Shuster Case officers and directors of the corporation permitted the wrongful abstraction of corporate funds for the purpose of paying debts of other corporations, and therefore malfeasance was clearly manifest. In the Walker Case corporate funds were misappropriated by directors and officers of the corporation to their personal use, and therefore malfeasance was clearly manifest. No such condition prevails in the case sub judice. Our courts have repeatedly held it to be unwise, and against public policy, to seek an occasion for interference with any corporation so long as its officers and directors are striving *Page 103 
against adversity with an honest purpose in these times of economic depression which are unprecedented within the memory of the present generation. If the court were to appoint a receiver herein the business world with which the defendant has been accustomed to deal may not appreciate the reasons underlying such receiver's appointment, and such appointment may be the cause of diverting from the defendant business which would ordinarily flow to it, and such action may be the means of seriously affecting, if not destroying, the defendant's good will which appears by the proofs herein to be very substantial. The interests of the defendant, its creditors, stockholders, and the public at large, will in my judgment be best subserved by the court exercising its sound discretion in denial of complainants' prayer for the appointment of a receiver herein. Such appointment would not only affect the livelihood of a great number of defendant's employes who subsist by the existence and continued operation of the defendant, but the investments of defendant's stockholders would materially depreciate in value.
Counsel for complainants, apparently conceiving towards the close of the hearing of the case sub judice, that the proofs herein were insufficient upon which to obtain a writ of injunction and decree for the appointment of a receiver under the provisions of section 65 of the Corporation act, urged that the court should exercise its authority under the general equity powers of the court to grant to complainants the relief prayed by them. I am firmly of the opinion that the complainants are not entitled to the relief prayed by them herein, under either section 65 of the Corporation act or the general equity powers of this court.
I will advise a decree dismissing the bill of complaint, and the order to show cause based thereon. *Page 104