JOHN R. EMERY, FREDERIC W. STEVENS, EUGENE STEVENSON,
EDMUND B. LEAMING, JAMES E. HOWELL, VIVIAN M.
LEWIS, JOHN H. BACKES AND JOHN GRIFFIN,
VICE-CHANCELLORS.

HENRY W. BULL et al.

*v.*

INTERNATIONAL POWER COMPANY.

[Decided February 11th, 1915.]

1. Section 65 of the act concerning corporations, Revision of 1896 (*P. L. p. 277*), providing for the appointment of receivers or trustees of insolvent corporations, as amended by act of April 1st, 1912 (*P. L. p. 535*), analyzed.

14 (209)

2. The court of chancery is a high court of general jurisdiction over the subject-matters which fall within its cognizance. Like the common law courts of general jurisdiction, its final judgments, namely, its decrees, do not, to be valid, have to show upon their face that all jurisdictional requirements have been complied with, as is the case with inferior tribunals of circumscribed and limited jurisdiction.

3. In a decree in chancery there need not be in the ordering or mandatory part an adjudication of the existence of facts warranting the making of such decree, although they may be stated in the recitals preceding the decretal paragraph, or may be omitted entirely. A decree entitled in the court and cause may properly proceed to adjudicate the rights of the parties and award appropriate relief without the recital of pleadings or evidence, and such decree will be valid if the record in the case demonstrates that the cause was properly cognizable by the court, and the decree is within the .issue raised by the pleadings.

4. The final decree of the court of chancery is not required to recite facts establishing jurisdiction; yet it is quite usual and proper, and the better practice, to succinctly set out the findings of the court in the recital part of the decree, and, where that has been omitted to be done, either party may, if he chooses, have the decree, already entered without such recitals, amended so as to include them, provided the chancellor in his discretion is willing to order such an amendment to be made.

5. A final decree may be amended even after enrollment by inserting a clause which was inadvertently omitted in drawing it and which is necessary to give effect to the remedy of the successful party. Such decree cannot be varied in substance without a rehearing, but it may be corrected or amended, on motion, as to mere clerical errors, or by the insertion of any provision or direction which would have been inserted as matter of course if asked for at the hearing as a necessary and proper clause to carry into effect the decision of the court.

6. A court of record has the inherent power to correct its own record by an order *nunc pro tunc*, even after appeal—for while, by an appeal, it loses jurisdiction of the case, it does not of its record—as where, through inadvertence some matter has been omitted from the record or some untrue statement inserted, or where the judgment entered contains misrecitals. The power of correction is confined to showing correctly the history of the proceedings before the appeal, and the lower court has no jurisdiction, pending an appeal, to interfere with the rights of parties under a judgment or decree.

7. An appeal from the court of chancery to the court of errors and appeals, while it removes the *cause* and the *potential* record, does not actually remove the *physical* record; that is, the *papers* constituting the record remain in the court of chancery, whose jurisdiction over the record, pending appeal, is ousted only to the extent of preventing the decree in the court of chancery from destroying or impairing the subject of the appeal, or being in any degree used for that purpose.

8. The court of chancery has the power to correct clerical errors, errors of form or mistakes in the drafting of decrees, as distinguished from judicial errors, pending appeal from its decree to the court of errors and appeals.

9. A decree in chancery will be·amended by the insertion of a clause inadvertently omitted and which would·have been included as matter of course if asked for at the hearing; and this pending an appeal, provided its effect would not change the status or interfere with the rights of the parties under the decree.

On motion to amend decree after appeal.

*Messrs. Vroom, Dickinson & Bodine,* for the motion.

*Messrs. Bleakly & Stockwell, contra.*

WALKER, CHANCELLOR.

On December 11th, 1914, a decree was entered in this case adjudging the defendant corporation to be insolvent, awarding the usual injunction and appointing a receiver, both under the statute. An appeal was taken to the court of errors and appeals by the defendant on December 14th, 1914. The decree appealed from recites that

"the business of said defendant corporation has been, and is being conducted at a great loss and greatly prejudicial to the interests of its creditors and stockholders, and that it is insolvent, and that a receiver for the defendant should be appointed," &c.

The act concerning corporations (*Rev. 1896; P. L. p. 277*), in section 65, provides for the appointment of receivers or trustees for insolvent corporations. That act was amended on April 1st, 1912. *P. L. 1912 p. 535.* The section, as amended, with the newly-added or amendatory words in italics, reads as follows:

"Whenever any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, *or if its business has been and is being conducted at a great loss and greatly prejudicial to the interest of its creditors or stockholders,* any creditor or stockholder may by petition or bill of complaint setting forth the facts and circumstances of the case, apply to the court of chancery for a writ of injunction and the appointment of a receiver or receivers *or trustee* or trustees, and the court being satisfied by affidavit or otherwise of the sufficiency of said application, and of the truth of the allegations contained in the petition or bill, and upon such notice, if any, as the court by order may direct, may proceed in a summary way to hear the affidavits, proofs and allegations which may be offered ·on behalf of the

parties, and if upon such inquiry it shall appear to the court that the corporation has become insolvent and is not about to resume its business in a short time thereafter, *cr that its business has been and is being conducted at a great loss and greatly prejudicial to the interest of its creditors or stockholders, so that its business cannot be conducted* with safety to the public and advantage to the stockholders, it may issue an injunction to restrain the corporation and its officers and agents from exercising any of its privileges or franchises and from collecting or receiving any debts, or paying out, selling, assigning or transferring any of its estate, moneys, funds, lands, tenements or effects, except to a receiver appointed by the court, until the court shall otherwise order.''

The section, as it originally stood, is as above recited, save that there is not contained therein the italicized words.

It appears, therefore, that prior to the amendment of April 1st, 1912, a receiver could be appointed for a corporation which had become *insolvent or had suspended its ordinary business for want of funds to carry on the same.* Now, a receiver may be appointed, not only if the corporation be in the situation just described, but, also, *if its business has been and is being conducted at a great loss and greatly prejudicial to the interest of its creditors and stockholders.* This language is in that part of the section which permits application *to be made* for the appointment of a receiver, and, later, in that part of the section which speaks of what may be made to appear to the court on the summary hearing, it is provided that *if the corporation has become insolvent and is not about to resume its business in a short time thereafter, or that its business has been and is being conducted at a great loss and greatly prejudicial to the interest of its creditors and stockholders, so that its business cannot be conducted with safety to the public and advantage to the stockholders,* the court may issue an injunction, &c., and appoint a receiver, &c.

Now, in the recital part of the decree in this cause, is this statement:

"and it appearing to the court upon such summary inquiry that the business of said defendant corporation has been and is being conducted at a great loss and greatly prejudicial to the interest of the creditors and stockholders,"

and it proceeds, "and that it is insolvent, and that a receiver for the defendant company should be appointed by this court," &c.

It is, therefore, apparent that the provision in the latter part of the section which reads, "that its business cannot be conducted with safety to the public and advantage to the stockholders," is omitted. The first part of the phrase, "so that its business cannot be conducted," is part of the newly-added matter in the amendment of 1912. The words "with safety to the public and advantage to the stockholders" are in both the original and amended acts.

Counsel for complainant now moves "to amend, or for an order amending *nunc pro tunc,* the decree entered in the above-entitled cause on December 11th, 1914, by inserting therein, after the word 'stockholder,' line 2, page 2, the following: 'so that its business cannot be conducted with safety to the public and advantage to the stockholders;' and further, by inserting in said decree, after the word 'insolvent,' line 3, page 2, the following: 'and is not about to resume its business in a short time thereafter;' and further, by inserting therein, after the word 'insolvent,' line 11, page 2, the following: 'and is not about to resume its business in a short time thereafter;' and further, by inserting therein, after the word 'stockholders,' line 14, page 2, of said decree, the following: 'so that its business cannot be conducted with safety to the public and advantage to the stockholders.' "

The first two amendments asked for relate to the recital part of the decree; the last two to the ordering part. On the argument counsel abandoned any request for amendments in the ordering part of the decree upon the theory that if the court recites the facts which it finds, its order need not contain them, but may proceed to decree the relief to which the party is entitled upon the facts found. This is sound. Surely, if a decree recites all of the jurisdictional facts upon which relief may be grounded, it need only proceed to award the appropriate relief. But, such recitals are unnecessary, as will hereafter appear.

It seems to me, however, that the complainants are entitled, if they desire, to have the statutory words, *"so that its business cannot be conducted with safety to the public and advantage to the stockholders,"* inserted.

Examination of many decrees of insolvency, and appointment of receivers in important cases, I think, will disclose that the recitals do not follow closely and literally the statutory language.

Counsel for defendant company urged that *Atlantic Trust Co. v. Consolidated Electric Storage Co., 49 N. J. Eq. 402,* is an authority, to the effect that the decree, to be valid upon its face, should show that all of the statutory requirements are found to exist. Upon examination it will be seen that that case dealt not with the *form of a decree* adjudging insolvency, but only with the *sufficiency of the facts* which would warrant the making of the decree. Said Vice-Chancellor Van Fleet, in that case (at *p. 404*):

"The power to dissolve an insolvent corporation and wind it up is statutory. It formed no part of the original jurisdiction of the court. It was conferred by a statute passed in 1829, and the language by which it was conferred has remained unchanged from that time to the present. *Elm. Dig. 32* §§ *11, 13; Rev. p. 189* §§ *70, 72.* This statute empowers the chancellor, on the application of a creditor or stockholder, alleging that the corporation in which he is interested has become insolvent, to proceed in a summary way to inquire into the truth of such allegation, and if, upon such inquiry, it shall be made to appear that the corporation has become insolvent, and shall not be about to resume its business in a short time, with safety to the public and advantage to the stockholders, he may enjoin it from the further exercise of its franchises, and also from the further transaction of business; and he may also, at the same time, or at any subsequent time during the continuance of the injunction, if, in his judgment, the circumstances of the case and the ends of justice require, appoint a receiver to dispose of its assets and distribute the proceeds."

In *Dan. Ch. Pl. & Pr. (6th Am. ed.) *1001,* it is stated:

"Decrees, in general, consist of four parts: (1) the date and title; (2) the recitals; (3) the declaratory part, if any; and (4) the ordering or mandatory part."

And (at *p. *1002*):

"2. Formerly, decrees contained recitals of the pleadings in the case; * * * But this is no longer the practice, and, unless the court otherwise specifically directs, no recitals ought to be introduced in any decree or order of the court; but the pleadings * * * on which such decree or order is founded, should be merely referred to."

And (at *p. \*1004*) :

"4. The ordering or mandatory part of the decree contains the specific directions of the court upon the matter before it."

Our statute provides that a decree in chancery shall not contain any recital of the bill, answer or other pleading. *Chancery act, Comp. Stat. p. 425 § 39.* The evidence is never set out, although facts proved are generally, and always properly, stated.

The court of chancery is a high court of general jurisdiction over the subject-matters which fall within its cognizance. In fact, it was anciently called the "High Court of Chancery." Like the common law courts of general jurisdiction its final judgments, namely, its decrees, do not, to be valid, have to show upon their face that all jurisdictional requirements have been complied with, as is the case with inferior tribunals of circumscribed and limited jurisdiction (except where statutes permit the omission of such recitals in certain summary convictions).

In a decree in chancery there need not be in the ordering or mandatory part an adjudication of the existence of facts warranting the making of such decree, although they *may* be stated in the recitals preceding the decretal paragraph, or may, for that matter, be omitted entirely.

I hold that a decree entitled in the court and cause may properly proceed to adjudicate the rights of the parties and award appropriate relief without the recital of pleadings or evidence, and such decree will be valid if the record in the case demonstrates that the cause is cognizable by the court, and the decree is within the issue raised by the pleadings. In other words, the final decree of the court of chancery is not required to recite facts establishing jurisdiction; yet it is quite usual and proper, and the better practice, to succinctly set out the findings of the court in the recital part of the decree, and, where that has been omitted to be done, either party may, if he

chooses, have a decree, already entered without such recitals, amended so as to include them, provided the chancellor in his discretion is willing to order such amendment to be made.

A final decree may be amended even after enrollment by inserting a clause which was inadvertently omitted in drawing it and which is necessary to effect the remedy of the successful party. *Dorsheimer* v. *Rorback, 24 N. J. Eq. 33.* In that case Chancellor Runyon said (at *p. 37*), quoting from a New York case:

"In *Clark* v. *Hall, 7 Paige 384,* the court says: 'A decree cannot be varied in substance, on petition, without a rehearing. But it may be corrected or amended, on motion or petition, as to mere clerical errors, or by the insertion of any provision or direction which would have been inserted as matter of course, if asked for at the hearing as a necessary and proper clause to carry into effect the decision of the court.' "

To the same effect is *Jarman* v. *Wiswall, 24 N. J. Eq. 68.*

The amendment here asked for is the insertion of language which would have been incorporated in the decree at the time it was signed if requested by the complainants. It was apparently omitted by inadvertence of the draftsman.

But the important question here involved, is, whether or not, now that an appeal has been taken, this court can amend its decree. In *2 Cyc.* (at *p. 976*), the rule is stated as follows:

"A court of record has the inherent power to correct its own record by an order *nunc pro tunc,* even after an appeal—for, while it loses jurisdiction of the case, it does not of its record—as where, through inadvertence, some matter has been omitted from the record, or some untrue statement inserted, or where the judgement entered contains misrecitals. The power of correction is confined, however, to showing correctly the history of the proceedings before the appeal, and the lower court has no jurisdiction, pending an appeal, to interfere with the rights of parties under a judgment."

This is equally applicable to the court of chancery and its decrees, except that by appeal the court of chancery does not lose jurisdiction of an appealed case *in toto,* but continues to have a limited control of it for certain purposes. See *Ashby* v. *Yetter* and *Robinson* v. *Robinson, infra.*

That an appeal from this court to the court of errors and appeals, while it removes the *cause* and the *potential* record, does not actually remove the *physical* record I think is quite apparent. That is, the *papers* constituting the record remain in this court, whose jurisdiction over the record, pending appeal, is ousted only to the extent of preventing the decree in the court of chancery from destroying or impairing the subject of the appeal or being in any degree used for that purpose. *Pennsylvania Railroad Co.* v. *National Docks Railway Co., 54 N. J. Eq. 648 (Court of Errors and Appeals, 1906).* The orders made by the court of errors and appeals in the unreported cases of *Lawton* v. *Beddell* and *Gorman* v. *Hinkle,* cited in *Ashby* v. *Yetter, 78 N. J. Eq. 173* (at *pp. 184, 185*), would, I take it, never have been made had that court considered that an appeal removed the record as well as the cause, for, in such case, there would have remained nothing in the court below upon which proceedings could there be had pending appeal.

The power of the court of chancery to take appropriate proceedings in a cause, pending an appeal, is recognized by the court of errors and appeals in the late case of *Robinson* v. *Robinson, 92 Atl. Rep. 94,* wherein it was held that, pending an appeal, alimony *pendente lite* might be awarded in that court, or the parties remitted to the *court of chancery* to make application *there.*

Rule 22 of the court of errors and appeals, at first blush, might induce the belief that the actual physical records of the court of chancery were removed into the court of errors and appeals, after an appeal perfected by depositing the sum necessary for securing costs; but, upon close inspection, it will, I think, be found that such is not the case. The rule reads:

"Whenever a deposit shall be made as aforesaid, with the clerk in chancery, he shall, if required, with all convenient speed, cause copies of the several orders and the decree in the cause, to be made at the expense of the appellant (who shall be liable for the same in the first instance) and deliver the same, with all the pleadings, depositions, exhibits and papers which may have been filed in his office relating to the cause, to the clerk of this court; and the said deposit shall be subject, prior to any other lien, to the fees of the clerk in chancery for the said copies."

It was while this rule existed that the orders were made in our appellate court for the enforcement of the decree in chancery in *Lawton* v. *Beddell* and *Gorman* v. *Hinkle,* pending appeal. It was in existence also during the time when innumerable orders and decrees have been enforced in chancery pending an appeal.

It will be observed that the rule does not require that the orders and decrees in a cause, in which an appeal has been taken, shall be sent up with "all the pleadings, depositions, exhibits," unless the same is comprehended in the further description "and papers" which may have been filed. Under the caption "papers" are, of course, included writs, notices, stipulations, &c. It is broad enough also to include orders and decrees, but, it is impossible to believe that the court by its rule would provide that orders and decrees should be sent up with the other papers when provision is made that *copies* of them shall be delivered with the pleadings, &c., and no specific mention is made of them as is of "pleadings, depositions, exhibits." What is meant by the clerk in chancery causing copies of orders and decrees to be made and delivered with the pleadings, &c., doubtless is, that if such copies are not sent up, the transcript on appeal is not complete and the appeal not perfected.

But, after all, whatever its intent and meaning, this rule is more honored in the breach than the observance. In fact, so far as I am aware, it is never complied with. It is a dead letter. The well known and universal practice on all appeals is neither to send up any original papers nor even copies from the chancery office. They have not been sent up in this case, nor will they be unless the court of errors and appeals should order it done. This rule (22) was adopted before the printing of the record on appeal became by rule the established practice, and was, I think, adopted at the time when the court of chancery and chancery office were not in the state house where the court of errors and appeals sat, but in the chancery building which formerly stood at the corner of State and Chancery streets, two blocks away. I understand that when appeals were heard in the days before printed records were distributed to the judges, the original papers were carried into court and read by counsel

and examined by the judges. It may well be that the rule (22) was adopted to insure the presence of the papers before the court of appeals at the time of hearing. Whatever the reason for its origin it has, as I said, fallen into entire disuse.

If the physical record were removed out of the court of chancery and sent into the court of errors and appeals, then, in many cases, where some injunctive or other affirmative relief might be necessary to protect and preserve the subject of the appeal pending proceedings in the court above, such relief could not be had, for undoubtedly the court of errors and appeals, being exclusively a court of appellate jurisdiction, could not put in motion the necessary proceedings springing out of original jurisdiction, for want of the proper machinery. *New Jersey Franklinite Co.* v. *Ames, 12 N. J. Eq. 507; Black* v. *Delaware and Raritan Canal Co., 24 N. J. Eq. 455, 477.*

The supreme court of the United States (*In re Wight, 134 U. S. 136*), held that a court may make *nunc pro tunc* entries to supply omissions in the record of what was done at the time of the proceedings, citing several cases, among them *Bilansky* v. *State, 3 Minn. 427;* referring to which Mr. Justice Miller, speaking for the United States supreme court (at *p. 144*), said:

"In the *Minnesota Case*, the plaintiff in error had been convicted of the crime of murder, and after trial and verdict, and after the case had been carried to the supreme court of the state, the record of the proceedings on the trial was amended so as to show affirmatively that each juror was sworn as prescribed by law; that they were put in charge of the officer to keep them as prescribed by law; and that they were polled at the request of the defendant on their coming in with their verdict; matters which, it seems, had been omitted in the record of the judgment. The supreme court in that case, as we think, stated with force and precision the true rule on this subject. They said: 'While we should go as far as any court in reprobating a rule to place the proceedings of a court almost entirely at the mercy of the subordinate officials thereof, we should be scrupulously careful in adopting any rule which would tend to destroy the sanctity or lessen the verity of the records. And while we admit the power to amend a record after the term has passed in which

the record was made up, we deprecate the exercise of the power in any case where there was the least room for doubt about the facts upon which the amendment was sought to be made * * * But when the facts stand undisputed, and the objection is based upon the technical point alone that the term is passed at which the record was made up, it would be doing violence to the spirit which pervades the administration of justice in the present age to sustain it. It is our opinion that this power of necessity exists in the district court, and that its exercise must in a great measure be governed by the facts of each case.'"

In *Apgar's Administrators* v. *Hiler, 24 N. J. Law 808,* the court of errors and appeals allowed the record to be amended in the court below pending proceedings on error. Mr. Justice Green speaking for the court, remarked (at *p. 809*) :

"The error in the judgment is an error not of form merely, but of substance, and if not amended, fatal to the validity of the judgment. It prejudices the rights of the plaintiffs in error, and renders them liable in a manner and to an extent, to which by law they are not amenable. *Rev. Stat. p. 351 § 6; Executors of Montgomery* v. *Reynolds, 14 N. J. Law 283.* Nor is it a mere clerical error in the mode of making up the record which this court can, as a matter of course, amend. The amendment must be made by the court below, upon the record there remaining, and be from thence duly returned to this court. The motion is to amend as well the verdict as the judgment. There is nothing in this court to amend by. The record remains in the court below. It is the practice after error brought, for the court below to amend the record in matters of substance, and to certify the record so amended to the court above." See, also, *Mumma* v. *Easton and Amboy Railroad Co., 73 N. J. Law 653.*

The cases *In re Wight* and *Apgar's Administrators* v. *Hiler* are cases in courts of law, where amendments are made in virtue of statutory enactments passed to relieve against the rigors of technical practice; but, surely, the court of chancery having broad inherent powers in that behalf, will, by analogy to the statute of amendments and jeofails and the Practice act, make

equally liberal, and, when necessary, more liberal, amendments. And this because its power to amend is not restricted by the terms of any statute, but is bounded only by the chancellor's discretion in the furtherance of justice. The Chancery act (*Comp. Stat. p. 438* § 77) merely provides that all amendments shall be made with or without costs and on such equitable terms as the court shall direct.

In *Foster* v. *Knowles, 42 N. J. Eq. 226,* Vice-Chancellor Bird (at *p. 230*), held:

"It it said that the complainant does not show, in her bill, that the conveyance to Mrs. Crosley at all 'hindered, delayed or embarrassed her,' &c. It is true there is no such allegation in the bill. It is also true that while the answer declares the fact, it does not claim any benefit therefrom. Therefore, since the cause has proceeded to final hearing, such defect may be supplied by apt amendments to the bill, in case the complainant prevails on the main question."

That a *decree,* as well as pleadings, may be amended, is entirely settled. The court of errors and appeals in *Horner* v. *Corning, 28 N. J. Eq. 254,* held that for correcting an error in a decree, application should be made to the chancellor to so amend it as to protect the rights of a party.

Clerical errors, errors of form or mistakes in the drafting of decrees, as distinguished from judicial errors, may be corrected. *16 Cyc. 504,* citing, among other cases, *Day* v. *Argus Printing Co., 47 N. J. Eq. 594.* In that case the court of errors and appeals affirmed an order of the chancellor amending the date of a decree.

The views above expressed lead to the conclusion that a decree in chancery may be amended by the insertion of a clause inadvertently omitted and which would have been included as matter of course if asked for at the hearing; and this, pending an appeal, provided its effect would not change the status or interfere with the rights of the parties under the decree.

The amendments asked for in the recital part of the decree will be granted, but without costs.