This is a bill for the winding up of the defendant corporation, filed by two of its stockholders, under the sixty-fifth section of the Corporation act, as amended by P.L. 1912 p. 535. It is not alleged that the company is insolvent or has suspended business, but that the facts show a situation coming within the scope of the additional statutory grounds provided by the 1912 amendment.
The bill contains a prayer for general relief, and, on the argument, complainants contended that a case had been made, justifying the appointment of a receiver under the general equity jurisdiction of the court.
Dealing first with the matter from the standpoint of the original theory of the bill, the proceeding being statutory, the legislative requirements must be proven as the basis for a decree enjoining the further exercise of the corporate franchises and the appointment of a statutory receiver. This necessitates a judicial determination that the company's "business has been and is being conducted at a great loss, and greatly prejudicial to the interest of its creditors or stockholders, so that its business cannot be conducted with safety to the public and advantage to the stockholders."
It is apparent from the proofs that the progenitors of the corporation organized it with the intention of looting it, and successfully carried out that intention. Some $250,000 par value of stock was issued, for which the company received only about $50,000. Obviously, this was a serious impairment of the company's capital — a loss of eighty per cent. thereof — although perhaps strictly it can scarcely be said that this loss was the result of the conduct of its business — that is, the ordinary business which it was to carry on under its certificate of incorporation. It occurred in the promotion and organization of the company, and before it began to carry on its intended business operations. There were, however, additional losses and impairment of capital, incident to the payment of dividends out of capital in default of income.
Assuming, then, that it is sufficiently shown that the business *Page 164 "has been conducted at a great loss," c., nevertheless, it must also appear that (in the absence of insolvency or suspension of business) it is being so conducted. In this behalf the proofs fail, to my mind. They show that the intentional fraud-doers have left, or been removed from, the corporation, and that for a year or so past the company has been doing business with a small but slowly increasing net income, notwithstanding the handicap of the partial restraint imposed by the pendentelite order of this court.
It is true that it appears the present directors (with perhaps one or two exceptions) were directors at the time of the wrongful acts above mentioned; that the losses to the company were, in large part, if not entirely, the result of gross negligence on the part of these directors, so that they are doubtless personally liable to the company therefor, and that they have not taken, and apparently do not intend to take, any steps to reimburse the company in that behalf. It may be said, therefore, that these directors are continuing a loss to the company, in the sense that they neglect and fail to recoup the loss already sustained.
That, however, in my view, is not the thing which the legislature had in mind. It is clearly quite a different thing from the continuing conduct and operation of the company's business at a loss, which, if not terminated, will result in insolvency. This latter is my interpretation of the statutory language. The original design of the statute was to provide for the enjoining and winding up of a corporation which had become actually bankrupt, or, by reason of inability to function normally by paying its current bills and keeping its business going, become so moribund as to make bankruptcy an inevitable result in the ordinary course of events, and the purpose was to preserve to the creditors — and stockholders, too, if possible — the assets that would inevitably otherwise be lost to them.
The 1912 amendment contemplates a point just anterior to those expressed in the original act, in the commercial descensusAverni, but still, nevertheless, as must be judged *Page 165 
from consideration of the history and design of the legislation, a point at which recovery has become, as a practical matter, impossible — a point where nothing but the intervention of the state can prevent capital loss to stockholders or creditors, or both, namely, that point in the business career where the business "has been" and "is being" conducted at great loss and "cannot be" in future conducted with safety, c.
It is also argued that the proofs show that although the corporation is earning net income at a gradually increasing rate, nevertheless it cannot, as a matter of simple mathematics, ever hope to pay full dividends upon its cumulative preferred stock, or any dividends on its common stock, and that hence, the stockholders are suffering, and will continue to suffer, loss in the sense that they obtain no income.
Assuming the correctness of the premise (as to which I think there is at least some doubt, inasmuch as it does not appear that all the stock is held by persons entitled to be treated as holders of full paid stock — indeed, the contrary appears as to some of it), still, in my view, that loss of income, or failure to obtain income, by the stockholders, is not the thing mentioned or contemplated by the legislature when it speaks of the "business of the company" being conducted at loss. The two things are clearly quite different, as I have already had occasion to hold in one or two unreported cases. Morse v. MetropolitanS.S. Co., 88 N.J. Eq. 325, does not hold to the contrary. The determination there is simply that the evidence (without specifying the nature of it) showed that the company's business had been and was being conducted at a great loss and greatly prejudicial to the interests of the creditors or stockholders. There are many corporations which have not paid a dividend on common stock for years, and cannot be expected to do so in many more years, but I have not known of any attempt to use that as a ground for winding up or receivership, in the absence of bad faith in the corporate management.
It is also urged that the company's business operations are being conducted usuriously; that it exacts usurious *Page 166 
interest under the guise of service charges; that each instance renders it liable to a penalty of $200 at the instance of the state, and that this brings it within the statutory language as to loss, c. Here, again, assuming the premise, the conclusion is unsound. The true conclusion from that premise would be, not that the company is operating at a loss, but that it is operating at the risk of loss. That might be said of almost all corporations. There are many corporations organized and openly operating in this state similarly to defendant, and have been for years, but no proceedings of the kind suggested by complainants have been brought for the recovery of penalties.
Assuredly, it was never intended by the legislature that this court should be either required or permitted to exercise indirectly, under the cloak and guise of this statute, a criminal or quasi-criminal jurisdiction. If there, indeed, exist just ground for action by the state in this behalf against this corporation, such action must be taken by direct proceedings.
Now as to the question of appointing a receiver under the general equity powers of the court. I find no fraud on the part of the present directors. Since they realized about a year ago what had been done in the looting of the company and the unlawful payment of dividends they waked up and there has been no mismanagement by them since — no conduct of the business for the benefit of some stockholder at the expense of others. The situation is very different from that which is set forth inMorse v. Metropolitan S.S. Co., 87 N.J. Eq. 217. The directors here have been full and frank in their disclosures of the corporate affairs, and have voluntarily given every assistance in the present investigation in the way of production of evidence. If the stockholders are dissatisfied with the corporate management they can presumably elect a new board and new officers. There is no evidence that the present directors control the majority of stock. Only one additional stockholder has intervened in the present proceeding, and it would appear *Page 167 
from the evidence that the stockholders generally are satisfied with the present board and its management.
It is, of course, true, as has been mentioned before, that the directors seem undoubtedly liable for the dividends unlawfully paid. That, however, is not a liability to the corporation, but to the injured stockholders, and enforceable only at the suit of the stockholders against the directors. Fleisher v. WestJersey Securities Co., 84 N.J. Eq. 55.
It may be that the directors are liable to the corporation in connection with the loss on the sale of stock. If there be ground for suit in that behalf, the stockholders can elect new directors who will have the company bring suit, or, in default of proper action in that behalf, stockholders may bring suit in their own names in behalf of the company. This liability, if it exists, is for a single past matter and does not involve present continuing misconduct. I do not think that this court should intervene by the appointment of a receiver under the circumstances shown.
The appointment of a receiver for a corporation at the suit of stockholders, under general equity jurisdiction, is warranted only where it is necessary to prevent a wasting or fraudulent diversion of the corporate assets which the stockholders are powerless themselves otherwise to prevent.
A decree will be advised dismissing the bill.