On the 20th day of June, A.D. 1930, a bill was filed by one "Rose Sternberg, of the town of Vineland, Cumberland county, State of New Jersey, a creditor of the Vineland Trust Company, a corporation, for and on behalf of himself and all other creditors of said corporation and the stockholders thereof who shall come in and contribute to the expense of this suit;" alleging that she was a creditor of said corporation "in the sum of $2,800 for moneys deposited by him with the said defendant and now standing to his credit on its books," and further charging in effect that the said corporation has suspended its business and that its property and assets have been seized by the commissioner of banking of New *Page 257 
Jersey, and that the said banking commissioner has "closed the doors of said defendant company and put a stop to its business operations and activities for the reason that the said defendant was in an unsound and unsafe condition to continue business and that its capital and surplus * * * had been fully depleted and impaired through losses and mismanagement;" that there are about six thousand depositors, and in detail alleges reasons causing such condition, and charges mismanagement and illegal acts by the officers and directors of said company, and prays that this court shall administer the rights, property and assets of the defendant, and adjudicate, enforce and adjudge the rights, c., of all creditors; that the said defendant may be decreed to be insolvent and that a receiver be appointed and that the defendant corporation be restrained from paying out, c., the funds of said company; further, that a writ of injunction issue restraining the banking commissioner of the State of New Jersey from liquidating the assets of the said company.
Upon the filing thereof, an order was advised appointing Albert R. McAllister and Thomas L. Hanson, custodial receivers of the trust company, restraining the said banking commissioner from liquidating the assets of the company and directing the defendant and its creditors and stockholders to show cause on the 30th day of June, 1930, why an injunction should not issue and why a receiver or receivers should not be appointed for the defendant, according to the prayer of the bill of complaint.
On the 8th day of July, 1930, Vice-Chancellor Leaming, after a hearing had on the return of the order to show cause, advised an order as follows: "That the said order to show cause made on the 20th day of June, 1930, be and the same is hereby discharged and the appointment of custodial receivers therein contained vacated; but complainant's bill may be retained, and complainant may, if so advised, at any time apply for a new order to show cause for restraint and the appointment of a receiver without prejudice from this order." *Page 258 
On the 21st day of August, 1930, Messrs. Israel B. Greene and Leber Ruback, as solicitors for and of counsel with petitioner, filed a petition entitled in the cause and stated to be "the petition of Rose Sternberg." The prayer of the petition was "that the relief prayed for in her original bill of complaint filed herein be granted, and that an order be made directing the defendant to show cause at a time and place therein specified why said relief should not be granted." This petition was signed by Israel B. Greene and Leber Ruback, as solicitors, and the affidavit verifying it was made by Israel B. Greene, one of the solicitors of record.
Notice was given to the Vineland Trust Company and Hon. Frank H. Smith, banking commissioner of New Jersey, that on the 28th day of August, 1930, at ten o'clock, application would be made for an order or decree; (a) appointing a receiver or receivers for the above-named defendant corporation in accordance with the statutes of this state in such case made and provided; (b) restraining the defendant, its officers and agents, from exercising its corporate franchise, and (c) granting to complainant such other and further relief as is prayed for in her bill of complaint." It was in said notice stated that "said application will be made upon all pleadings and proofs filed herein, the testimony taken on the summary hearing held in this cause, and upon the petition," which had been filed with the court and above referred to. This hearing was continued from time to time.
On September 2d 1930, an affidavit of Rose Sternberg was presented to the court by M.J. Greenblatt, a member of the bar, residing at Vineland, who did not represent Miss Sternberg but simply acted as a messenger to carry said affidavit and deliver it to the court. In this affidavit she states:
"Someone came to see me a short time ago on behalf of Benjamin Shanefield, who, I understand, is now ill, for the purpose of getting my consent to renewing the application for the appointment of a receiver. I refused to give my consent and stated that I was very well satisfied with the present management and the present efforts of the group of men who are trying to reopen the bank, and that I did not want to put any obstacles in their path. I was very much *Page 259 
surprised to learn through the local newspapers that an application had been made for that purpose in my name. I called Mr. Shanefield on the telephone and directed him to withdraw the proceeding. He refused to do so and stated that he would not do so. I desire that this proceeding be withdrawn because it has been reinstated against my wishes, and furthermore, I want the entire suit discontinued."
The matter was again continued and affidavits were filed by Benjamin Shanefield, Hannah Shanefield and Henry H. Kessler, the substance of which is to deny that Shanefield had any communication or conversation with Miss Sternberg, as she sugggested, and further, that "pressure was being brought to bear upon her to withdraw from the case."
On September 2d 1930, a petition was filed by Henry Meyer, Hugo Pabst and Harry Noltemeyer, praying that they be permitted to intervene. This petition was verified upon the 26th day of June, 1930, but was not presented until September 2d 1930. On September 15th, 1930, an additional bill in the same nature as the Sternberg bill was filed by Hugo Pabst. On September 15th, 1930, there was filed a petition of Meyer, Pabst and Noltemeyer, praying that they be made parties complainant in the original cause. This petition is signed by Benjamin Shanefield as solicitor of petitioners and verified by affidavits of Meyer, Pabst and Noltemeyer, and by Israel B. Greene. Hearing was set for October 17th, 1930, and notice was given of a motion to dismiss the petition of Meyer, Pabst and Noltemeyer on the ground that the parties in question did not care to prosecute or continue with said petition. On said October 17th, 1930, an affidavit of Hugo Pabst was filed in the following language:
"I am a resident of Landis township, New Jersey. A short time after the Vineland Trust Company closed its doors, I was invited with a Mr. Noltemeyer to go to the home of one Samuel Barish, at Norma, New Jersey. There I met a man named Mr. Shanefield, a Newark lawyer. It was represented to me by both Mr. Shanefield and Mr. Barish that I was signing a petition to be circulated among the other depositors. They told me at that time that if I signed the petition I would get my money more quickly. The language used by *Page 260 
both of them was substantially to the effect that I would not lose anything by signing the petition. A short time ago, I think it was on Friday, September 12th, although I am not sure of the date, I received a telephone call from Newark, New Jersey, from a man who represented that he was speaking for Shanefield's office. At the time of the telephone call I was at Mt. Vernon, New York, where I was working. I made an appointment to meet him that evening. Some gentleman whose name I did not know but who was not Mr. Shanefield came to my rooming house and there secured my signature to another paper. I still thought it was a petition being circulated among the depositors. I am informed and verily believe that proceedings have been instituted in the court of chancery in my behalf asking for the appointment of a receiver by some lawyers from Newark, New Jersey. It was never represented to me at any time that court proceedings would be instituted in my behalf, but on the contrary, after I made inquiry, I was informed that there would be no court proceedings. I have never retained the Newark attorneys who say they represent me in these receivership proceedings for that or any other purpose. I have never paid to them or their agents one penny counsel fee and neither have I been asked to pay anyone counsel fee. I am making this affidavit for the purpose of stopping the chancery proceedings started in my behalf and more specifically do I desire to make it clear that I am withdrawing from any proceedings concerning the Vineland Trust Company instituted in my behalf."
The affidavit of Henry Meyer is substantially to the same effect as Pabst's, and the one made by Noltemeyer is of the same nature. On the same day, an affidavit was filed by Benjamin Shanefield, substantially denying the affidavits of Pabst, Meyer and Noltemeyer, and stating that "if these gentlemen now wish to withdraw from the case, it is my belief that their change of heart is due to fear resulting from intimidation." Affidavit of Harry Federbush denies some of the statements in the Noltemeyer, Meyer and Pabst affidavits, and the affidavit of Samuel M. Barish denies that representations were made as stated in said affidavits.
The contention made by counsel for the defendant that the complainant and the intervenors do not wish to proceed with this cause is fully substantiated and there can be little if any doubt but that their decision in this respect is voluntary.
Since the order made by Vice-Chancellor Leaming, the efforts then being made for the rehabilitation of the trust company *Page 261 
have not borne fruit, but other efforts are being made which may become fruitful. Without detailing the plan, an affidavit was filed by William E. Jenkins, first vice-president of the Vineland Trust Company, in which it is stated that "the plan presented by the Tradesmen's Bank and Trust Company of Vineland would be a quick plan for affording relief to the entire situation in relation to the affairs of the Vineland Trust Company."
When it becomes manifest to the court that the complainant and the petitioner upon the application desires to withdraw from the proceeding and to withdraw from the action or, as in this case, denies the authority of his solicitor or counsel to file a petition or to verify the same, the solicitor cannot, of his own volition, use his position as solicitor to prosecute the action, unless there be rights belonging to him against his client "which the court will permit him to secure by force of his position" none of which appear in this cause.
The late Mr. Justice Dixon, speaking for the court of errors and appeals, said, in Delaney v. Husband, 64 N.J. Law 275:
"An attorney of record stands in a two-fold relation — he is the representative of his client, and he is an officer of the court. In the former relation he is to defend and enforce his client's rights and is subject to his client's order, but he should not in that relation use his position to prosecute his own claims which are adverse to his client. In his relation as an officer of the court, there are certain rights belonging to him against his client, which the court will permit him to secure by force of his position as attorney on the record, but the nature of these rights is defined by general rules, and is not to be enlarged by private contract. Thus, an attorney of record cannot be removed without leave of the court, and such leave will ordinarily not be granted, except on paying or securing to the attorney his proper fees and disbursements in the cause."
The affidavits show conclusively that the present application is made against the request of Miss Sternberg. *Page 262 
The brief filed by counsel for the complainants is based upon the following points: (1) that the suit is in the nature of aquo warranto proceeding under the New Jersey statute; (2) that the suit, being an insolvency proceeding, must be prosecuted even against the wishes of the complainant and the intervenors; (3) that the judicial policy requires that upon the happening of insolvency, a statutory receiver shall be appointed, and (4) that as a matter of judicial discretion, the court should proceed to a final decree.
Vice-Chancellor Fallon, in Kelly v. Kelly-Springfield TireCo., 106 N.J. Eq. 545, said:
"Section 65 of the Corporation act, as amended by chapter 300 of the laws of 1912" (which, insofar as it is applicable here, has the same provision as amended section 24 of the Trust Company act, except in the Trust Company act the attorney-general or any creditor or stockholder may, c.), "was analyzed by Chancellor Walker in Bull v. International Power Co., 84 N.J. Eq. 209.
It authorizes any stockholder to apply to the court for relief such as sought herein. The legislative wisdom manifested by such enactment cannot be questioned by counsel or the court. It has been repeatedly held by our courts that where a creditor or stockholder comes into court under section 65 of the Corporation act it is not his particular grievance the court is to redress, or his individual interest that is to be protected; but the very object of the act is to protect the public at large from imposition, and to promote and secure the general interest of the stockholders and creditors. See Rawnsley et al. v. TrentonMutual Life Insurance Co., 9 N.J. Eq. 95; Naspo v. SummitSweets Shoppe, Inc., 106 N.J. Eq. 49. The case of Glaser v.Achtel-Stetter's Restaurant, Inc., Ibid. 150, frequently referred to by counsel in receivership cases, and referred to in argument by counsel for defendant herein, is not applicable to the case sub judice except in so far as it holds that the appointment of a receiver is not a matter of absolute legal right and therefore sound discretion should be exercised by the court before any such appointment is made, and in so holding it only states the well-established principle of our law." *Page 263 
Vice Chancellor Fallon, in the same case, also said, at page 555:
"I have in mind in my consideration of this case the cautionary words of Judge Baldwin [`in the leading case of Bonaparte v.Camden and Amboy Railroad Co., Baldw. C.C., 205, 217'], quoted in the oft-cited case of Citizens Coach Co. v. Camden HorseRailroad Co., 29 N.J. Eq. 299 (at p. 303): `There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case than the issuing of an injunction.'A fortiorari the appointment of a receiver. The extraordinary powers conferred upon this court by section 65 of the Corporation act should be exercised with caution, and only when the circumstances of the case and the ends of justice require it. Such appears to be the admonition of our courts as indicated by numerous authorities, of which I deem it necessary to cite onlyOakley v. Paterson Bank, 2 N.J. Eq. 173 (at pp. 178, 179);Brundred v. Paterson Machine Co., 4 N.J. Eq. 294 (at p.305); Rawnsley v. Trenton Mutual Life Insurance Co., 9 N.J. Eq. 347; Atlantic Trust Co. v. Consolidated Electric StorageCo., 49 N.J. Eq. 402, 406, 407; New Foundland RailwayConstruction Co. v. Schack, 40 N.J. Eq. 222; Cook v. EastTrenton Pottery Co., 53 N.J. Eq. 29; Greenbaum v. Lafayette andBroad Realty Corp., 96 N.J. Eq. 317 (at p. 319)."
This statement is, of course, as applicable to section 24 of the Trust Company act as to section 65 of the Corporation act.
For this purpose, without deciding that these proceedings are in the nature of quo warranto, it is only necessary to refer to the statute under which this application is made, which reads:
"Whenever any trust company shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, the attorney-general or any creditor or stockholder may, by petition, c." Cum. Supp. Comp. Stat. p. 3754 § 24, as amended; laws of 1913, chapter 171, page 290. *Page 264 
Therefore, should it become advisable or necessary that these proceedings be further carried on, the attorney-general of the State of New Jersey has statutory power to proceed. This trust company is now in the custody of the commissioner of banking of this state, and should it be found that this court has power to grant relief which the banking commissioner, as such, does not possess, it would be his duty to take such steps as he may find necessary to obtain such relief.
It was suggested that it might become the duty of this court to appoint counsel as amicus curiae to prosecute these proceedings (it being found that no complainant is desirous of proceeding and that, therefore, no counsel is authorized to do so). It cannot be believed that it would become the duty of this court to take such action, the banking commissioner already being in charge, and the attorney-general being authorized by statute to take the necessary proceedings should, in his judgment, need for such action arise.
The petition praying (a) for the appointment of a receiver or receivers for the defendant corporation; (b) restraining the defendant, its officers and agents, from exercising its corporate franchises, and (c) granting to complainant further relief, will be dismissed.
The application of Noltemeyer, Pabst and Meyer that they be permitted to intervene will be refused, by reason of the fact that if such application was made by their authority, they now withdraw such authority and their application.
The application of the Vineland Trust Company to dismiss the bill is merely academic. No final determination can arise under this bill unless the attorney-general of this state, or some creditor or stockholder shall intervene. Dismissing the bill would only necessitate the filing of a new bill in the event the attorney-general should desire to proceed or some creditor or stockholder decided to intervene. I will, therefor, permit the bill to be retained in order that any interested and proper party may apply for a new order to show cause, c. *Page 265