The bill is filed for the appointment of a receiver and the dissolution of the defendant corporation. It is predicated upon the ground that the defendant company's business has been and is being conducted at a great loss and greatly prejudicial to the interests of its creditors and stockholders, so that its business cannnot be conducted with safety to the public and advantage to the stockholders, and, secondly, upon the general equity jurisdiction of the court to prevent the waste *Page 513 
or fraudulent diversion of the corporation's assets, which the stockholders are powerless themselves to prevent. Upon the first ground the power of the court here sought to be invoked is purely statutory, and it is therefore incumbent upon complainants to prove that defendant's business has not been, is not being, and cannot be conducted with safety to the public and advantage to the stockholders. Kelly v. Kelly-Springfield Tire Co.,106 N.J. Eq. 545.
The company operated profitably after its organization in 1920 until the year 1930. In 1931 it sustained a loss of approximately $856; in 1932 a loss of some five or six hundred dollars and in 1933, up to the time of the filing of the bill, its loss was approximately $2,000. I approximate the losses because of the conflict in figures between the complainants and the defendants. The total losses for the past three years were approximately $4,000.
The company resists, pointing to the fact that it presently has a capital of $26,400 with no accounts payable, a reserve of $734.61 for bad debts and $3,170.42 for depreciation, while its plant is free and clear of encumbrances, with cash in hand of $1,200, a first mortgage which it holds on real estate in the sum of $8000, and further that dividends were paid to its stockholders up to and including 1932.
The company's business by its charter is limited to the manufacture and sale of boxes and cases for musical instruments. Before its organization one of the defendants, its president, Stefan Draveczki, owned and conducted the business and sold it to the corporation for $35,800, July 3d 1920. He became the owner of one hundred and forty-nine shares, his wife, Annie, held one share and complainants the balance of one hundred and fourteen. Complainants and Draveczki are experienced craftsmen in the manufacture of the company's product. In the first six years following its organization it did a minimum business of $54,178.59, and a maximum of $67,382. Because of business decline in 1926 the stockholders (all employes, except the wife of Draveczki) were reduced in salary in order to increase cash on hand and build up surplus. In the years from 1925 to 1930 the business *Page 514 
steadily declined. The gross for 1929 dropped to $29,239.72, and the year following to $23,907.68, so that salaries on January 31st, 1930, in addition to many other economies effected previously, upon the vote of complainants in the board of directors (they being in the majority on the board) over the objection of Draveczki and his wife were abrogated, and compensation for labor was paid thereafter upon fixed hourly rate, complainants and Draveczki being the only persons employed by the company so far as the proofs herein show. In 1931 there was a further sharp drop and the gross was $10,830.81 while a loss of $1,379.85 was sustained. In 1932 the gross was $4,431.20 and the loss $1,122.79. In 1933 to the time of the filing of the bill the deficit is $2,680.44. Although it paid dividends for the past four years, such dividends were paid out of surplus built up prior, and the company now has no surplus, and its cash has dwindled to $1,205.
On January 4th, 1933, complainants say that a resolution was passed by the board of directors to dissolve the company, and that Draveczki at this meeting threatened them, saying, "you've got nothing left and at the next July meeting I will throw you all out." Draveczki denies the passage of the resolution as well as the threat, but the fact remains, that at the meeting July 3d 1933, Draveczki elected his wife, daughter and son as directors in place of complainants. According to the proofs before me the company has a few orders at present totaling $325. It has no business and no future prospect for its manufactured product. Complainants say the reason for the corporation's present condition is due directly to the development of the radio and movietone, which deprived untold numbers of musicians of employment, thus seriously affecting the market for musical instrument boxes and cases. The defendant does not deny the effect of the radio and movietone upon its business, but assigns the general business depression as the real reason. With this latter I do not agree. The decline in defendant's business, pointed out herein was gradual and steady from 1925 to 1930, a period during which the industries of the entire world enjoyed unprecedented *Page 515 
prosperity. The drop from $67,382 in 1923 to $23,907.68 in 1930, and $10,830.81 in 1931 to $4,431.20 in 1932, is strong and convincing proof that this defendant's business, because of the radio and movietone, can no longer be conducted with safety to the public and advantage to the stockholders.
The appointment of a receiver at the suit of stockholders is justified "where it is necessary to prevent a wasting or fraudulent diversion of the corporate assets which the stockholders are powerless themselves otherwise to prevent."Kron v. Trenton Automotive Collateral Co., 96 N.J. Eq. 162.
By virtue of P.L. 1896 p. 298 (Comp. Stat. p. 1640), as amended P.L. 1912 ch. 300 p. 535, a receiver may be appointed not only when the corporation has become insolvent, or has suspended its ordinary business for want of funds to carry on the same as authorized by P.L. 1896 p. 298, but also, if its business has been, or is being conducted at a great loss and greatly prejudicial to the interest of the creditors and stockholders. Bull v. International Power Co., 84 N.J. Eq. 209.
The evidence is convincing that the defendant corporation's business has been, and is being conducted at a great loss and greatly prejudicial to the interest of its creditors and stockholders, and that there is little or no market in these modern times for its product which its charter confines to the making of musical boxes and instrument cases, and that its business has for this reason not been, and is not being and cannot be conducted with safety to the public and advantage to the stockholders.
Decree will be in accordance with these conclusions. Receiver will be appointed. *Page 516