SAMUEL PRASHKER and GOLDIE PRASHKER, complainants-appellants,

*v.*

THE NEW JERSEY TITLE GUARANTEE AND TRUST COMPANY et al., defendants-respondents.

[Submitted May term, 1941.   Decided October 20th, 1941.]

*Messrs. Milberg & Milberg (Mr. Henry Milberg* and *Mr. Samuel Neshel,* of counsel), for the appellants.

*Mr. Thomas F. Meaney,* for the respondents.

The opinion of the court was delivered by

PERSKIE, J.

The determinative question in this cause is whether appellants' rights as holders of guaranteed first mortgage participation certificates issued by respondent Trust Company should have been determined, as they urge, in accordance with the "Equity Rule," and not in accordance with the "Bankruptcy Rule" as urged by respondents and adopted by the court.

The facts are not in dispute. On February 13th, 1939, the board of directors of the Trust Company unanimously adopted a resolution requesting the Commissioner of Banking and Insurance of our state "to take charge of the institution before the opening of [its] banking hours on February 14th, 1939." Pursuant to that request, the Commissioner took possession of the property and business of the Trust Company, on February 14th, 1939, and commenced the liquidation thereof. *N. J. S. A. 17:4-101* to *17:4-114.*

On June 22d, 1939, on application of the Commissioner, our Court of Chancery took jurisdiction over the administration of this liquidating trust (*Cf. Kelly v. Middlesex, &c., Trust Co., 116 N. J. Eq. 228, 230; 172 Atl. Rep. 487*) and, on the same day, entered an order requiring creditors of respondent Trust Company to file their claims with the Commissioner on or before October 20th, 1939.

Appellants are the registered owners of four "Guaranteed First Mortgage Participation Certificates," in the sum of $10,000 issued by the Trust Company. By each certificate, the Trust Company, among other things, "acknowledged

itself indebted to and promised to pay the registered holder thereof the [face amount of the certificate at a fixed rate of interest, payable at fixed times] * * *" and assigned to each holder "an undivided share, equal to the face value [of each certificate] * * * in and to certain bonds and * * * mortgages securing the same * * * held in special deposit by the Trust Company * * *."

At the time the Commissioner took over the Trust Company (February 14th, 1939) the face amount of the certificates was $3,504,500. Of this amount the Trust Company held certificates in the sum of $74,500, and there were on special deposit bonds and mortgages (in the "mortgage pool" which was first created on April 30th, 1924) on which there was due the sum of $4,249,542.37.

Within the time fixed for filing claims, appellants filed a proof of claim with the Commissioner in the "sum of Ten Thousand ($10,000) Dollars [total face amount of their certificates] with interest thereon from the first day of November, 1938." In their proof of claim appellants stated, *inter alia,* that "they are entitled to share in any dividend to be declared payable to general creditors *pro rata* with such general creditors, and in addition reserve their rights to receive their proportionate share out of the mortgage pool trust."

The Commissioner rejected appellants' proof of claim because he doubted "the justice and validity" thereof.

Thereafter, and in due season, appellants filed their present bill to review the propriety of the Commissioner's disposition of their claim. By their bill they sought, generally stated, an adjudication to the effect that the "Guaranteed First Mortgage Participation Certificates" issued by the Trust Company, as aforesaid, were primary and not secondary obligations of the Trust Company and that, therefore, appellants and all other holders of like certificates" (were) entitled to participate and share in any dividends to be declared payable to general creditors of the said Trust Company *pro rata* with such general creditors in addition to the right to receive their proportionate share of the proceeds derived from the liquidation of the mortgage pool trust * * *."

Vice-Chancellor Kays sustained the first branch of appellants' contention, namely, that the certificates in issue did "constitute a direct and primary obligation" of the Trust Company. For, said he, the Trust Company "unconditionally promised to pay the face amount of the certificates to the holders thereof transferring to the holders an interest in the underlying bonds and mortgages [known as the 'mortgage pool'], as the collateral security for its debt." *Prashker* v. *New Jersey Title Guarantee and Trust Co., 130 N. J. Eq. 102, 105; 17 Atl. Rep. (2d) 303.* He, however, refused to sustain the second branch of appellant's contention. He held that their rights as certificate holders were the same "as the rights of creditors holding securities in the case of an insolvent corporation or an insolvent estate." Hence, the "Bankruptcy Rule" applied. *In re New Jersey Title Guarantee and Trust Co., 130 N. J. Eq. 89, 100, 101; 17 Atl. Rep. (2d) 296; Prashker* v. *New Jersey Title Guarantee and Trust Co., supra.*

Accordingly, the learned Vice-Chancellor advised a decree which was entered, adjudging that the guaranteed first mortgage participation certificates here issued were "primary obligations" of the Trust Company; that appellants were entitled only to a general claim against the Trust Company, upon proof prior to final liquidation and distribution of the assets of the Trust Company, of "actual loss" on said certificates and, then only for the amount of such "actual loss;" and that the rejection of appellant's proof of claim by the Commissioner of Banking and Insurance be affirmed but without prejudice to appellants to file "a supplemental or amended claim," as within time, in conformity with the decree. Hence this appeal which gives rise to the question first posed as requiring decision.

The rule for which each of the respective parties is contending represents clearly existing, divergent views on the subject. On the one hand, there is the view known as the "Equity Rule." By this rule, "the creditor can prove for, and receive dividends upon, the full amount of his claim, regardless of any sums received from his collateral after the transfer of the assets from the debtor in insolvency, provided that he shall

not receive more than the full amount due him." On the other hand, there is the view known as the "Bankruptcy Rule." By this rule, "the creditor desiring to participate in the fund is required first to exhaust his security and credit the proceeds on his claim, or to credit its value upon his claim and prove for the balance, it being optional with him to surrender his security and prove for his full claim." The "Equity Rule" represents the majority view and the "Bankruptcy Rule" represents the minority view in the case of *Merrill* v. *National Bank of Jacksonville, 173 U. S. 131, 137; 43 L. Ed. 640, 642.* After a careful consideration of the history and merits of the respective views (they are exhaustively treated in the case of *Merrill* v. *National Bank of Jacksonville, supra*), we adopted the minority view—the "Bankruptcy Rule." *Butler* v. *Commonwealth Tobacco Co., 74 N. J. Eq. 423; 70 Atl. Rep. 319.*

It is altogether clear that in pursuance of equitable principles established long before applicable statutory enactments, and long before the decision of this court in the *Butler Case,* our courts have followed the "Bankruptcy Rule" in the administration of insolvent estates (*Cf. State Bank* v. *Receiver of the Bank of New Brunswick, 3 N. J. Eq. 266; Bell* v. *Fleming's Executors, 12 N. J. Eq. 13; affirmed, Id. 490*), and our courts are presently following that rule. *Cf. Federal Trust Co.* v. *Cohen, 116 N. J. Eq. 201, 203; 172 Atl. Rep. 502* (insolvent decedent's estate).

But appellants strongly argue that since there is concededly neither allegation nor proof of insolvency, the decisions in support of the "Bankruptcy Rule" are without application and, therefore, the "Equity Rule" should have been followed. We do not share that view.

There are, under the statute (*N. J. S. A. 17:4-101, et seq.*), two distinct methods by which a trust company may be liquidated. The first method is embraced within *N. J. S. A. 17:4-101 to 17:4-114.* By this method the Commissioner liquidates the affairs of the trust company, as its statutory agent. But this method is employed and limited to instances where the assets of the trust company, after the payment of the expenses of liquidation, are sufficient to pay depositors

and creditors, not including stockholders, the full amount of their claims. *N. J. S. A. 17:4-113.* The second method is embraced within *N. J. S. A. 17:4-115* and *17:4-116.* By this method the affairs of a trust company are liquidated by a receiver in insolvency proceedings. *Roseville Trust Co.* v. *Barney, 89 N. J. Law 550, 553; 99 Atl. Rep. 343; Sternberg* v. *Vineland Trust Co., 107 N. J. Eq. 255; 152 Atl. Rep. 370; Koch* v. *Morsemere Trust Co., 107 N. J. Eq. 516; 153 Atl. Rep. 498.*

While it is true that the meager record submitted fails to disclose why the Commissioner took over the Trust Company save that the latter requested him to take charge of its affairs, and while it is true that there is nothing to indicate whether the assets of the Trust Company are sufficient, under *N. J. S. A. 17:4-113* to pay depositors and creditors the full amount of their claims, it is equally true that the record is barren of any objection by appellants, or by any other depositor or creditor to the taking over of the Trust Company and the liquidation thereof by the Commissioner. Indeed, no such objection could with propriety be made at this late day.

We are, of course, obliged to decide the posed question requiring decision on the record as submitted. And as submitted, it is clear that the taking over of the respondent Trust Company was, and the liquidation thereof is, in pursuance of the first stated method. Notwithstanding the method thus employed and followed by all here in interest, and the conceded lack of an allegation of insolvency or proof of the fact of insolvency, we hold that the learned Vice-Chancellor properly applied the "Bankruptcy Rule" in determining the validity of appellants' claim as filed.

The requirement for a "ratable distribution" of general assets, which forms the basis of the "Bankruptcy Rule," had existed, as an established principle in equity in the administration of assets, "for hundreds of years" prior to the adoption of the Bankruptcy Act. (See dissenting opinion by Mr. Justice White in *Merrill* v. *National Bank of Jacksonville, supra,* and *Federal Trust Co.* v. *Cohen, supra* (at *pp. 202, 203*)). That long established equitable principle is that where one "creditor has two securities and the others only

one, the former must exhaust his claim to that which is entirely his own before he can resort to that which they hold in common." *Cf. Whittaker* v. *Amwell National Bank, 52 N. J. Eq. 400, 418; 29 Atl. Rep. 203,* and *State Bank* v. *Receivers of New Brunswick, supra* (at *pp. 271, 272*).

Such a principle is based on equality and equality is equity. It neither prejudices appellants' rights nor does it otherwise trench upon appellants' asserted constitutional rights. The "Bankruptcy Rule" does not as suggested change the effect of the primary obligation of the Trust Company. Nor does it relieve the Trust Company from its primary obligation to its certificate holders, for the secured creditors may ultimately share in the general assets of the Trust Company. Moreover, the "Bankruptcy Rule" has the added virtue, assuming that proper administration shall protect, as it should, against dissipation of the general assets, of permitting all classes of creditors to share on as equal a footing as the terms of their respective obligations permit. No harm can come to the secured creditors if they must first exhaust their security and then prove for their actual loss against the general assets of the Trust Company.

We have carefully considered all other points argued and conclude that they merit no further comment.

The decree is affirmed, with costs.

*For affirmance*—PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 13.

*For reversal*—None.